[No. 28337. Department Two. August 25, 1941.]

MORRIS MUSKATELL, *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 116 P. (2d) 363.

222

*Stevenson & Gershon,* for appellant.

*A. C. Van Soelen, John A. Logan* and *Tom M. Alderson,* for respondent.

JEFFERS, J.—This is an appeal by plaintiff, Morris Muskatell, from an order made and entered by the superior court for King county, granting the motion of defendant, city of Seattle, for a new trial, upon the specific ground that the court erred in giving instructions Nos. 7, 8, and 9, and in refusing to give defendant's requested instructions Nos. 4, 6, 7, and that portion of No. 8 not contained in instruction No. 10 as given.

This action, predicated upon § 16, of Art. I, of the state constitution, was instituted by plaintiff against the city of Seattle to recover damages to plaintiff's building, claimed to have resulted from the construction of a sewer, by the city, in front of plaintiff's property.

The complaint alleges that, prior to June, 1938, the city determined that it would construct a trunk sewer on East Marginal Way, extending along the westerly side of the street; that, pursuant to such determination, the city retained the Queen City Construction Company to do the necessary excavation and construction work; that, on or about June 14, 1938, the construction company commenced work in front of plaintiff's property; that this work was all done and performed under the direct supervision, inspection, and direction of the city's engineer; that, as the proximate result of the construction of the sewer, a subsidence in the soil and earth upon plaintiff's property and beneath his building occurred, resulting in the sinking of the concrete floor in his building and in the cracking and twisting thereof.

The amended answer admitted that the work was done under the direct supervision, inspection, and direction of the city, and denied the allegations as to the damage, if any, to plaintiff's building, by the construction of the sewer.

As a first affirmative defense, defendant alleged that the work was done in accordance with the approved and up-to-date engineering and sanitary practices.

It is alleged in the second affirmative defense that the injuries, if any, sustained by plaintiff were caused by his own contributory negligence, in that his building was constructed on soil that was largely of filled-in sand, and is located on the old tideland area, which is subject to the inflow and outflow of the tidal waters

and underground percolating waters daily; that plaintiff, knowing of this condition, erected his building without proper foundation, and, after having erected his building, plaintiff further aggravated the improper construction by storing great quantities of canned salmon upon the floors, and driving heavily loaded trucks over the floor, all of which caused the building to subside and cracks to appear in the floor; that all of these acts were the proximate cause of the subsidence of the building and the damage claimed by plaintiff.

Third, fourth, and fifth affirmative defenses were also set up in the answer, but, in view of the action taken by the trial court, the allegations contained in those affirmative defenses are not material herein.

The material facts may be stated as follows: Plaintiff's property, a one story frame building, sheeted with corrugated iron, and used as a fish reconditioning warehouse, is located on the tide flats. The land upon which the building stands is similar to that throughout the entire tideland area. About six feet below the surface, the soil, composed mostly of sand, is impregnated with what is described as percolating waters. This water originates from rainfall upon the surrounding area, especially on Beacon hill, and seeps underground towards the Duwamish river and the sound.

Under plaintiff's property, as well as under other property in the district, is a water table, which rises when the tide is in, and lowers when the tide is out. When the tide is in, it serves as a dam to check the flow of this ground water, causing the ground to swell, and as the tide goes out and this underground water is allowed to flow, the ground subsides. This ground water is fresh water, and not tidal waters. Engineers and contractors, testifying for plaintiff, stated that, while the sewer was being constructed in front of plain-

tiff's property, they saw sand, mud, and water coming into the sewer excavation through the cribbing at the side of the excavation, and coming in from the bottom of the trench from under plaintiff's building.

Plaintiff and other witnesses testifying in his behalf stated that the cracks in the floor were not there prior to the construction of the sewer, and these witnesses further testified that, in their opinion, the sinking of the floor, the cracks in the floor, and the injury to the building, for which damages were asked, were caused by the sand, silt, and water which was forced out from under plaintiff's building into the sewer trench.

Mr. Lennox, one of the operators of the reconditioning plant, testified that, while the work on the sewer was progressing, he observed a settling of the building and the development of cracks in the floor; that he notified the engineer in charge of construction, and the engineer inspected the damage and informed him that he would take care of the matter at once.

Mr. Klaeboe, another of the operators of the reconditioning plant, testified that he notified the construction people of the damage; that he saw the sewer during construction, and that sand, silt, and water were entering the sewer trench through the sidewalls and from the bottom; that the city had a large pump in the trench which pumped this sand, silt, and water out of the ditch.

The city admits that in digging the sewer trench they affected the underground water, and withdrew the same to some extent from the surrounding area.

Defendant's witnesses testified that there was very little, if any, sand or silt coming into the trench through the cribbing driven along the sides of the ditch, but that water was coming up from the bottom of the ditch. One witness testified that only water was coming into the ditch. The expert witnesses for the city

testified to the effect that the trench in front of plaintiff's property was dug in accordance with good engineering practice, and that there is no practical method of digging a trench in ground of the nature here encountered, without having water in the bottom thereof.

Mr. Breen, engineer in charge of this work for the city, testified that the ditch was seventeen feet deep; that they struck water at about six feet, and for the remaining eleven feet they were in wet soil and water all the time.

Mr. Sylliaasen, an engineer of long experience, testifying for the city, stated that, in his opinion,

". . . the cracks in the warehouse floor were caused by settlement in the sand below this structure due to the fact that there was not a foundation under the building which will prevent settlement and that the load which caused the settlement was the dead weight of the building plus loads placed on the building on the floor at various times in years gone past."

This witness further testified that, in his opinion, based on his examination of the building and known facts in engineering, this building settled and cracked from the day it was constructed.

The trial court gave, among others, instructions Nos. 7, 8, 9, and 10, which read, respectively, as follows:

"(7). You are instructed that § 16, of Article I, of our state constitution provides as follows:

" 'No private property shall be taken or damaged for public or private use without just compensation having been first made.'

"This constitutional provision fixes liability for any physical damage to property, through excavation or construction work carried on at or near the damaged property in question, regardless of whether the damage is caused with or without negligence.

"Therefore, if you find that the plaintiff's property was damaged by reason of the construction of the trunk sewer or the excavation work incidental thereto, as

carried on by the defendant's contractor, your verdict must be for the plaintiff."

"(8). You are instructed that it is not necessary for plaintiff in this action to allege, or prove, that the defendant was guilty of negligence. Every land owner is entitled to have the soil of his land maintained in its natural condition, and the right of the adjacent land owner, including the rights of a city in grading and excavating for a sewer, to excavate on his own land, is subject to the restriction that he, or it, must not remove the earth so near to the land of his neighbor, that his neighbor's soil will give way or slide by its own weight; and so if you find that as the proximate result of the act of the defendant in excavating for a sewer adjacent to the plaintiff's property, the soil of plaintiff's property gave way and moved, and as the result of such moving and giving way of the soil, the land or the building of the plaintiff was damaged, then your verdict should be for the plaintiff."

"(9). You are instructed that the city of Seattle is not charged in law with the duty to provide drainage for seepage or surface water, and that the defendant city is not liable to the plaintiff for any damages that may have been caused by surface or seepage water. Surface and seepage water, under the law of this state, is a common enemy and it is the duty of each property owner to take precautions against damages resulting therefrom."

"(10). I instruct you that if you should find from the evidence that the damages, if any, suffered by plaintiff resulted from defects in the building or from the super-imposed weight of the building or unequal or defective footings or improper foundation for the structure, or any other independent cause, then you must find for the defendant."

The trial court refused to give defendant's requested instructions Nos. 4, 6, 7, and that portion of No. 8 which was not included in instruction No. 10 as given. The requested instructions read as follows:

"(4). If you believe from the evidence that the method adopted by the city of Seattle to keep the adjoining earth from coming into said excavation, was a reasonable method to protect the adjoining land, then I instruct you there can be no verdict against the defendant."

"(6). You are instructed that no one has a right, independently of all others, to the ordinary soil waters impregnating the soil underneath his property in modern cities and that, if the city of Seattle in excavating for a trunk sewer should deplete the surrounding areas thereto by excavation of ordinary subsoil waters and thereby without their fault or neglect cause a settling of the buildings in adjoining areas, recovery will not in law be allowed for such damage if any occurs."

"(7). You are instructed that if you find the plaintiff knew, or should have known, of the excavation for the sewer in question, it was his duty to take necessary measures to protect his building from the probable consequences of the excavation. If the excavation was done in a careful and prudent manner, the burden is then upon plaintiff to prove that he did take such necessary measures to protect his building, but the plaintiff was not bound to protect his property or to guard against damage from the negligent acts of the defendant, if any, of which he had no knowledge."

"(8). You are instructed that the mere fact that the Muskatell building suffered injury, if you should so find, is not sufficient to show negligence on the part of the excavator, and it is for you to determine such negligence, if any, and if you should find from the evidence that the said injuries resulted from defects in the building or from the superimposed weight of the building or unequal or defective footings or improper foundation for the structure, or any other independent cause, then you can not find against defendant in this case."

The jury returned a verdict in favor of plaintiff, and thereafter defendant filed a motion for judgment notwithstanding the verdict, or in the alternative for new

trial. The court denied the motion for judgment notwithstanding the verdict, but granted the motion for new trial, for the specific reasons

"(1). That instruction No. 9 was erroneous, and defendant's requested instruction No. 6 should have been given, the defendant being entitled to an instruction covering the doctrine of percolating waters.

"(2). That the giving of instructions Nos. 7 and 8 was erroneous in that the defendant could not be held liable in the instant case in the absence of negligence or of defective or improper plans, and the failure of the court to give defendant's requested instructions on the doctrine of negligence, which were defendant's requested instructions Nos. 4, 7 and that portion of defendant's requested instruction No. 8 which was not contained in instruction No. 10 as given by the court."

This appeal by plaintiff followed.

Error is assigned upon the granting of the new trial upon the special grounds that the city is not liable, in the absence of negligence or of defective or improper plans, and upon the ground that the city was entitled to an instruction covering the doctrine of percolating waters.

Appellant contends that the instructions as given, with the exception of instruction No. 9, were proper, and that the giving of instruction No. 9 did not constitute prejudicial error. Appellant's position in this case appears from the statement of Mr. Stevenson, on page 143 of the statement of facts, and is as follows:

"We are not contending the sewer was negligently dug and we do not see any point to that at all. For the purpose of the law of the case we will stipulate that it was not negligently dug. . . . There is no question of negligence in this case. . . . They are liable under the constitution for the damages when the building of the sewer caused the damage, negligence or no negligence. If we are wrong on that we are out of court."

The city, on the other hand, contends that, since it had the legal right to improve its streets by the laying out of sewers, wholly within the confines of the street (citing 1 Elliott on Roads and Streets (4th ed.), §§ 20, 484, and McQuillin on Municipal Corporations (5th ed.), §§ 1553, 1385), it cannot be held liable in so doing (1) in the absence of negligence, or (2) for an improper plan of improvement.

There seem to be two rules relative to the removal of lateral support, quite generally recognized, as stated in 1 R. C. L. 383, § 18, and 384, § 19.

"(18) It is now well settled that the owner of *land* is entitled to have it supported and protected in its *natural condition* by the land of his adjoining proprietor, and that if such adjoining owner remove such natural support, whereby the soil of the former is disturbed or falls away, he is legally liable for all damages so occasioned. . . . The liability in this respect is not dependent in any wise upon the degree of skill or care that he exercises in making the excavation, but is absolute, and the fact that the falling of the soil on the adjoining land was due to the action of the elements does not constitute a defense." (Italics ours.)

(One of the cases cited to sustain this rule is *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086, to which reference will hereinafter be made.)

"(19) In accordance with the principles already stated, the owner of land who excavates on or near the boundary line, whereby the lateral support of a *building* on the land of an adjoining proprietor is removed and the building falls, is not liable if he uses such care as an ordinarily prudent person would use under the circumstances of the particular case in making the excavation and building his walls; but he is liable in damages if the injury to his neighbor was occasioned by the negligent and unskillful manner in which the excavation was made or maintained." (Italics ours.)

In 50 A. L. R. 486, the rule last above stated is announced, and again (p. 489) reference is made to the *Farnandis* case, *supra,* as follows: "A constitutional provision, it has been held, qualifies and limits the general rule in Washington." See *Knapp v. Siegley,* 120 Wash. 478, 208 Pac. 13.

We first find a departure from the general rule last above stated, in the case of *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161. While this case does not discuss the distinction between liability for the removal of lateral support to the land in its natural state and the buildings thereon, other than as will be pointed out, it seems to assume that, under our constitutional provisions, damages may be recoverable alike for land or buildings. The cited case involved the right to an injunction against the city, to restrain the city from grading down Jefferson street. The court found the damages to the land and buildings, if such grading down were permitted, would be more than the benefits. No distinction is made between the damage to the land and buildings. In the course of the opinion, we stated:

"But the main question is, admitting the fact of injury, would the respondent be entitled to compensation from the city? Previous to the adoption of the constitution she would have been without remedy, excepting for such injury as might have occurred to her *land alone,* arising from the withdrawal of support and its consequent actual falling in, or from the *negligence of the city in doing the work. Parke v. Seattle,* ante, p. 1; *Gilmore v. Driscoll,* 122 Mass. 199; *Smith v. Corporation of Washington,* 20 How. 135. But the constitution of this state (art. 1, § 16) provides that no private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner, and it is upon this prohibition that the respondent bases her right to an injunction." (Italics ours.)

After discussing the reason for putting the word "damaged" in our constitution, we stated:

"If private property is damaged for the public benefit, the public should make good the loss to the individual. Such always was the equity of the case, and the constitution makes the hitherto disregarded equity now the law of it."

We now come to the *Farnandis* case, hereinbefore referred to. In this case plaintiffs (there were two cases consolidated, but we shall refer to them as one case) brought an action against the Great Northern Railway Company to recover damages to their buildings, occasioned by the construction of a tunnel, which construction, it is alleged, caused the earth to sink and subside, thus occasioning the settlement and collapse of the buildings. It appears that, as the result of this construction, large cracks opened up between the tunnel and the buildings, causing the buildings to crack, and the settling of the earth caused the buildings to partially collapse.

The cited case refers to the rule hereinbefore announced, relative to the removal of lateral support, and its effect on the right to recover for damages to buildings. No negligence was alleged or proven in the cited case. Our former decisions, including the cases of *Parke v. Seattle,* 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68, and *Brown v. Seattle, supra,* were referred to, and we stated:

"The effect of our decisions, as above stated, is to hold that for a physical injury or direct invasion of property rights, damages are recoverable under the provisions of the constitution that 'no private property shall be taken or damaged for a public or private use without just compensation having been first made.' It follows, of course, that the liability does not depend upon the degree of care or skill used to prevent damage. The question whether the damage to the buildings situated one hundred and twenty feet away from

the nearest point of appellants' tunnel was caused by the removal of the lateral support of the soil or by shaking the earth by blasts was a question for the jury. But in either event the liability of the appellants was the same whether the damage was caused with or without negligence. The sinking and cracking of the earth was evidently not due to any increased downward or lateral pressure upon the soil by the buildings, because the cracks and sinking appeared between the buildings and the tunnel and extended through the buildings. If the weight of the buildings did not in any wise contribute to the sinking or cracking of the earth, then the removal of the earth was the direct cause of the damage both to the land and to the buildings. To hold under such circumstances that appellants would be liable only for the damage to the land, and not to the buildings, would be to follow the shadow of the old rule and to disregard the substance of it and the reason upon which it was based."

We have carefully read and considered the *Farnandis* case, the cases therein referred to, and many others, and we have concluded that, under the rule in this state, as announced in the *Farnandis* case and the case of *Wong Kee Jun v. Seattle*, 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625, it is immaterial, in an action brought under the constitutional provision to recover damages, either to the land or the buildings located thereon, for the removal of lateral support, whether or not the city was negligent in the manner in which the work was done. However, we have recognized that the sliding and slipping of the soil must occur because of its own weight, and not because of the superimposed weight of the buildings thereon. This is apparent from the *Farnandis* and *Wong Kee Jun* cases, *supra*. While the opinion in the *Wong Kee Jun* case does not indicate whether the damages sought to be recovered were for injury to the land or buildings, and no distinction seems to be made therein, other than as appears from an instruction given, to which

we shall refer, a reading of the record in that case shows that the damages claimed were for injury to a building. In the cited case, this court, in effect, approved the following instruction given by the trial court:

"You are instructed that it is not necessary for plaintiff in this action to allege, or prove, that the defendant was guilty of negligence. Every land-owner is entitled to have the soil of his land maintained in its natural condition, and the right of the adjacent land-owner, including the rights of a city in grading or excavating its streets, to excavate on his own land, is subject to the restriction that he, or it, must not remove the earth so near to the land of his neighbor that his neighbor's soil will slide by its own weight, and so if you find that as the proximate result of the act of the defendant in excavating the streets adjacent to the plaintiff's property the soil of plaintiff's lot, by its own weight, slid and moved, and as the result of such sliding and moving of the soil, the land or the building of the plaintiff was damaged or destroyed, then your verdict should be for plaintiff."

The trial court in the instant case embodied the above instruction in instruction No. 8 as given. In giving instructions Nos. 8 and 10, the trial court covered the situation here presented, and might well have eliminated instruction No. 7 as given, but we are of the opinion no prejudicial error resulted from the giving of instruction No. 7, in view of the other instructions given.

In *Knapp v. Siegley,* 120 Wash. 478, 208 Pac. 13, we stated:

"We held in *Farnandis v. Great Northern R. Co., supra,* where recovery was sought for damages to buildings which were caused to partially collapse by reason of removal of lateral support in excavating for a tunnel, that the liability did not depend upon the degree of care or skill used to prevent damage; that the lia-

bility of the railroad company was the same whether the damage was caused with or without negligence."

While in the *Knapp* case the plaintiff assumed the burden of proving, first, damages, second, negligence on defendant's part, and third, that plaintiff's land would have fallen when the adjoining land was excavated up to it, to the depth it was, unweighted by buildings, and instructions were given on the negligence theory, we are satisfied the *Knapp* case does not change the rule announced in the *Farnandis* case, *supra*, but, as shown by the above quotation, it is apparent that the case affirms the rule.

In the instant case, the city contends that the original grade doctrine applies here, and that under such doctrine there can be no recovery for the removal of lateral support in excavating for an original trunk sewer, where the excavating is done wholly within the limits of the street, and in the absence of evidence tending to show the city was negligent in the prosecution of the work, citing *Ettor v. Tacoma*, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061; *Wood v. Tacoma*, 66 Wash. 266, 119 Pac. 859; and other authority. We are of the opinion that the rule announced in this state relative to the right of recovery for damages caused by an original grade has not been and should not be extended beyond its application to an original grade, and that the rule is not applicable herein.

Being satisfied that there was no question of negligence in this case, it follows, we think, that the trial court properly refused to give requested instructions Nos. 4, 7, and 8. All that appellant was required to plead and prove was that the city, in the construction of its sewer, removed the lateral support of appellant's property, thereby causing sand, silt, or water to be forced out from under appellant's building, directly causing

the damage to the building complained of. Appellant introduced evidence tending to prove these facts.

Respondent had the right to, and did, introduce proof to the effect that the damages were caused by imperfect foundation, the dead weight of the building, and loads put upon the building, and was entitled to an instruction to the effect that, if the jury believed the damage to the building was caused by these factors, or any of them, and not directly from the removal of the lateral support of the building, then appellant could not recover. The trial court, in instructions Nos. 8 and 10, covered these matters.

█ The city also contended that the trial court should have given the city's requested instruction on percolating waters, and the court was also of the opinion that it should have given such an instruction. We are of the opinion that no instruction on percolating waters should have been given in this case. We think there is a distinction between a case based on the constitutional provision for the removal of lateral support, where the removal of such lateral support withdraws percolating waters from under the building of an adjoining land owner, thereby directly causing damage to the building, and the cases where the general rule relative to percolating waters is applied.

We are of the opinion the *Farnandis* case, *supra,* recognized such a distinction. In the cited case the court gave an instruction on percolating waters, but it modified such instruction in the following words:

" 'However, for this instruction to apply you must believe that the percolating or subterranean waters withdrawn were upon the railway company's own property. It would not apply if such water was withdrawn from underneath or below or in a public street or in property which was not the property of said railway company."

In explaining the modification in the cited case, we stated:

"This modification was made by the court upon the theory that the city could grant no greater right than it possessed; *and since the city would be liable for damage caused by removing the lateral support* under the rule in *Parke v. Seattle* and *Brown v. Seattle, supra,* therefore the corporation using the street for private gain by authority of the city would be liable in the same way." (Italics ours.)

See, also, *Oklahoma City v. Collins-Dietz-Morris Co.,* 183 Okla. 264, 79 P. (2d) 791, and *Prete v. Cray,* 49 R. I. 209, 141 Atl. 609, 59 A. L. R. 1241.

The city, in support of its contention, cites *Evans v. Seattle,* 182 Wash. 450, 47 P. (2d) 984; *Clinchfield Coal Corp. v. Compton,* 148 Va. 437, 139 S. E. 308, 55 A. L. R. 1376; *New York Continental Jewell Filtration Co. v. Jones,* 37 App. D. C. 511; and the early case of *Popplewell v. Hodkinson,* L. R. 4 Exch. 248. While the *Evans* case, *supra,* discusses the rule relative to percolating waters, it was a suit for the loss of water supply, and did not involve the constitutional question or the right to lateral support. The *Clinchfield* case has many distinguishing features. It was also a suit based upon the loss of water supply, but the case states that the percolating waters were cut off by the legitimate mining operations of the company on its own land. The *Popplewell* case, which was decided under the common-law rule, held that, where a property owner's land subsided because of the withdrawal of percolating waters by an adjoining owner, the damage to the land was *damnum absque injuria.* However, it is apparent from the *Evans* case, *supra,* that the old common-law rule as to percolating waters has been greatly modified, and that we have adopted the reasonable use rule.

Whatever the general rule may be in regard to per-

colating waters, we are of the opinion that, under our constitutional provision, for an action brought for the removal of lateral support, there is and should be no distinction whether, by the removal of the lateral support, sand, silt, quicksand, or water is removed from under the land of the adjoining property owner, directly causing the damage for which complaint is made.

We are therefore of the opinion that, while instruction No. 9 had no application to the facts in this case, it was not prejudicial to the city. Being of the opinion that the city was entitled to no instruction on percolating waters in this case, it follows that the refusal to give requested instruction No. 6 did not constitute error entitling the city to a new trial. Being also of the opinion that neither negligence nor the absence of a proper plan of improvement is material in this case, we are of the opinion the court properly refused to give requested instruction No. 4, and that part of requested instruction No. 8 not included in instruction No. 10 as given.

We are also of the opinion that the court properly refused to give requested instruction No. 7. See *Knapp v. Siegley,* 120 Wash. 478, 208 Pac. 13. In the case cited, an inspection of the record will show that instruction No. 7 requested by the defendant in that case covers the same matter as requested instruction No. 7 in the instant case. The trial court in the cited case refused to give the instruction, and we held it did not commit error in so doing.

While we do not particularly commend the form of the instructions given, in that the court, in instructions Nos. 7 and 8 as given, made no exception and failed to call attention to the rule of law laid down in instruction No. 10, we are of the opinion that, considering all the instructions, and in view of the fact that the trial court granted the motion for new trial because of its failure

to give an instruction on negligence and one on percolating waters, no error was committed by the trial court warranting the granting of a motion for new trial.

The order of the trial court is therefore reversed, with instructions to vacate the order granting a new trial, and to enter judgment for appellant on the verdict as rendered.

ROBINSON, C. J., MILLARD, BEALS, and SIMPSON, JJ., concur.

