Albert, Appellant, *v.* Most Reverend John Wright, Bishop of the Roman Catholic Diocese of Pittsburgh.

Argued January 11, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused April 22, 1963.

*Lloyd F. Engle, Jr.,* with him *Sidney J. Sable,* and *Wilner, Wilner and Kuhn,* for appellants.

*William L. Jacob,* with him *William L. Jacob, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 28, 1963:

The Alberts, Thomases, and the Curleys own lots, in that successive order, fronting on Chrysler Street in the 19th Ward of the City of Pittsburgh. The rear line of these lots adjoin, to the north, property owned by the Roman Catholic Diocese of Pittsburgh.

The Alberts purchased their property in 1954, and the Thomases in 1948. After the Thomases took possession, and for five years following, they spread on their land a fill made up of earth, rock, bricks, concrete chunks, metal, tree stumps and wood. Much of this heterogeneous mass slid over to the adjoining lot of the diocese then owned by the City of Pittsburgh, and encumbered as well the land on either side owned by the Alberts and the Curleys.

The predecessors in title to the Albert's also heightened their backyard with fill. The Alberts themselves did little or no significant filling.

A portion of the fill on the Albert and Thomas properties moved, through operation of the law of gravitation, as well as the rains and the snows, on to the diocesan property at some points to a depth of 90 feet.

In August, 1960, Father Garber, Pastor of Our Lady of Loretto Church, having been authorized to

build a school building on the diocesan property, visited all the homes fronting on Chrysler Street and, in the rear, abutting the diocesan property, to discuss with the owners, the problem presented by the migratory fills. He stated that he was willing to allow some of the offending fill to remain on the diocesan land so as to continue to give support to the backyards involved, provided the property owners would allow the diocese to regrade parts of those backyards so as to establish a grade which engineering standards assured would be stable. The diocese would also agree to reseed the regraded parts of the backyards.

Several of the property owners accepted this proposal but the Alberts, Curleys and the Thomases declined to cooperate. On June 6, 1961, the diocese formally notified the landowners involved that it would soon start excavating on its own ground and advised them to take such steps as would be necessary to protect their properties from injury. The Alberts, Curleys and the Thomases ignored the notice.

On June 29, 1961, the diocese began removing the trespassing dirt and debris on its property, and cut back or trimmed the bank of the fill with a 12 to 16 cubic yard scoop pulled by a bulldozer. It excavated or cut into the natural or virgin soil at the foot of the bank to a depth of not more than 5 feet.

On July 26, 1961, after the trimming and excavation were finished, the filled earth began to move, and a sharp fracture developed on the Thomas property 37½ feet, on the Albert property 33 feet, and on the Curley property 33 feet from the dividing line. The fracture settled to a depth of 5 to 6 feet below the level to which it had been filled. No damage was done to the buildings.

On August 4, 1961, the Alberts and the Curleys filed a complaint in equity against the Most Reverend John Wright, Bishop of the Roman Catholic Diocese

of Pittsburgh, in his capacity as Trustee of the Congregation of the Church of our Lady of Loretto. They also named as a defendant, James J. McGaffin, doing business as McGaffin Construction Company, the contractor for the diocese. The complaint averred that the diocese and McGaffin had removed lateral support from the rear of the plaintiffs' properties, causing slide and damage. They asked for an injunction and damages.

On September 6, 1961 the Thomases filed a complaint in equity against the diocese and McGaffin charging improper excavation and negligent undermining of plaintiffs' property. They also sought an injunction and damages.

Both defendants filed preliminary objections to both complaints.

On October 16, 1961, the diocese filed a complaint against the Thomases, the Alberts and the Curleys, demanding that they be required to remove the trespassing fill placed by them or their predecessors on the diocesan property, since it was interfering with the construction of the school building, and constituted a dangerous threat to life and property in the area.

At the preliminary hearing the parties stipulated that the preliminary objections filed be withdrawn and that each complaint should be considered not only as a complaint but also as an answer to the complaint of the adverse party.

After taking considerable testimony the chancellor handed down a thorough adjudication, finding in favor of the diocese in all three actions. He held that the diocese and McGaffin were not liable to the three property owners for any damage to the filled area on their lots and entered a decree against the three property owners requiring them to remove all of the filled ground lying within specifically designated distances from the common dividing line to the virgin soil of the church

property. The court further ordered the three property owners to "either regrade the rear yard of their property or support the said rear yard . . . in such a manner that no ground, soil, or fill shall spread, wash, slough off, or be deposited in any manner upon the church lands."

The Alberts and the Curleys appealed to this Court from the dismissal of their exceptions to the chancellor's adjudication and decree.

We are satisfied that the chancellor properly determined that that portion of the appellants' land which was disturbed by the excavations on the diocese property was "filled" land and not land in its natural state, and therefore the diocese was under no duty to provide lateral support for it. The court below properly distinguished the case of *Bradley v. Valicenti,* 185 Pa. Superior Ct. 403, relied upon by appellants. That case, as stated by the chancellor, did not intend to establish a new right of lateral support. The amount of fill there involved was insignificant and, as stated by the Superior Court, was "to the rear of the property and not to the area collapsing and threatened with collapse." In the case at bar, however, the amount of fill was considerable, consisting of some 4700 cubic yards, and was the only part of the adjoining properties which was in any way injured or threatened with injury by the excavation on the diocesan property.

The chancellor has properly decided that the land in controversy was not land in its natural state and consequently not owed the duty of lateral support by the adjoining property owner.

Nor does the record indicate that the chancellor erred in finding that there was no negligence on the part of the contractor in the excavating process.

There is no reason to disturb the chancellor's findings or conclusions of law with respect to the rights, duties and responsibilities involving the diocese, the contractor and the three property owners.

One modification in the decree, however, is required. Paragraph 7 reads: "The Church of Our Lady of Loretto, its agents, servants, and employees, shall not be liable for any damage done or occasioned to the Albert's, Thomas's, and Curley's properties or any of them, in accomplishing the removal of any ground or soil except for wilful damage."

The Church would be liable for improper removal of ground or soil not only for wilful damage but for damage which may be the result of an operation conducted negligently. Paragraph 7 is therefore amended to read that the Church will be liable for damage done wilfully or negligently.

With this modification the decree is affirmed; costs on the appellants.

Mr. Chief Justice BELL, Mr. Justice BENJAMIN R. JONES and Mr. Justice COHEN dissent from that portion of the decree which requires removal of the ground or soil.