[No. 792-2.   Division Two.   October 11, 1973.]

CURTIS BAY et al., *Respondents*, v. STEVE HEIN et al.,
*Appellants*.

*William R. Garland*, for appellants.

*David H. Armstrong* (of *Sanchez, Martin & Armstrong*),
for respondents.

PETRIE, J.—This is a lateral support case. Defendant Hein
cleared land and excavated soil, to depths ranging from 3 to
8 feet, on his property near and parallel to the line which

divides his property from that of plaintiff Bay. Hein's property lies south of Bay's property but Hein originally owned both parcels. Beginning at or near the common boundary line the land slopes at about a 45-degree angle toward the south. The cut or excavation was made primarily through fill dirt, some of which may have been placed on the property when Hein owned both parcels.

The principal issue on appeal arises because of the trial court's refusal to enter Hein's proposed finding, as follows:

> All of the sloughing of the soil and invasion of plaintiff's property has occurred in that portion of the soil lying between the original ground contour and the present ground level which has developed by filling.

The trial court did find that soil to the north of the excavation cut has sloughed to an extent as to invade Bay's property *at its present ground level.* Because of this invasion, the trial court awarded damages to Bay in the amount of $3,000. Bay contends that the "fill" on his land, which has been invaded by the excavation and resultant sloughing, is as much entitled to lateral support as is the "natural" soil. Hein contends, on the other hand, that he is entitled to remove any fill from his own land and that he is not liable for any resulting invasion of the fill on Bay's land. As a matter of abstract principle, we agree with Hein, but with the limitation that he cannot with impunity invade that portion of the fill, if any, on Bay's land which was deposited when he (Hein) owned both parcels of land.

A few additional facts are necessary before we can appreciably reach the legal issues involved. During the period of time when Hein owned both parcels he built a house on what is now Bay's property, the southern side of which is approximately 8 feet north of the now common boundary. The house was built on native soil, but in 1940 Hein excavated a basement and later he dug a cesspool. In each case he threw the dirt to the south of the house. There is no loss of lateral support for Bay's house.

During World War II members of a military detachment stationed nearby deposited refuse in an area partially along

what is now the common boundary. In 1944 or 1945 Hein disposed of the parcel now owned by Bay, to Bay's predecessor. Hein then moved to eastern Washington and returned in 1962. In the intervening time, filling occurred to the south of the house so as to raise the contour to level, extending southerly beyond the common boundary into Hein's present property. Bay purchased the property in 1970. The clearing and excavation operations, which precipitated this action, began in August, 1971.

Bay's essential contention—that the fill on his land is entitled to lateral support—is premised alternatively upon two theories: (1) the fill on his land constitutes an "improvement" which is entitled to lateral support; (2) the fill has existed for such a long period of time that it has now become the natural level of the land for which lateral support is required.

In this jurisdiction, the right to lateral support is founded not merely on the common-law right, but rather, upon the constitutional right[1] which prohibits the taking or damaging of real property for public or private use without just compensation. *Bjorvatn v. Pacific Mech. Constr., Inc.*, 77 Wn.2d 563, 464 P.2d 432 (1970); *Muskatell v. Seattle*, 10 Wn.2d 221, 116 P.2d 363 (1941). That constitutional right, together with its corresponding responsibility, exists between two contesting private parties. *Kelley v. Falangus*, 63 Wn.2d 581, 388 P.2d 223 (1964). Further, this constitutional basis, as construed, sometimes produces a departure from common-law concepts. *Kelley v. Falangus, supra; Farnandis v. Great Northern Ry.*, 41 Wash. 486, 84 P. 18 (1906).

In the case at bench, assuming that the fill on Bay's land qualifies as an "improvement," it remains nevertheless as an artificial structure or condition. In this jurisdiction, the rule of lateral support, insofar as an "improvement" is concerned, has been clearly enunciated. Under our constitution, every landowner in this state has a natural right to

---

[1]Const. art. 1. § 16 (amendment 9) provides in part: "No private property shall be taken or damaged for public or private use without just compensation having been first made, . . . ."

lateral support. *Knapp v. Siegley,* 120 Wash. 478, 208 P. 13 (1922). Whoever violates that natural right to support renders himself liable to the landowner for the resulting damage, not only to the land, but also to the improvement. *Muskatell v. Seattle, supra; Bjorvatn v. Pacific Mech. Constr., Inc., supra.* The landowner may not, however, by placing an improvement upon his land, *increase* his neighbor's duty to support the land laterally. *Farnandis v. Great Northern Ry., supra.*

Upon Bay's theory—that the fill constituted an "improvement" on his land—he may recover for the taking or damaging of that fill only if Hein violated the land's natural right to lateral support. In other words, if Hein deprived Bay's land of its natural support—as opposed to the additional support necessitated and created by deposit of the fill —then Bay is entitled to recover for any resulting damages including the loss to the fill. If, on the other hand, there has been no invasion of the land which is normally entitled to lateral support, then there has been no taking or damaging in the constitutional sense.

Obviously, it is a necessary material fact whether or not the invasion of Bay's land resulted solely because of the additional support required by the fill. Hein contends the evidence establishes that all of the sloughing of the soil and invasion of Bay's property has occurred in that portion of the soil lying between the original ground contour and the present ground level which has developed by the filling.

We need not, however, examine the record to ascertain the correctness of that contention—because, in the case at bench, some of that fill may have developed when Hein owned both parcels and before the property was divided. Indeed, Hein testified not only that he tossed approximately 33 cubic yards south of the house, but he acknowledged that some of the fill was placed on the premises by members of the military detachment stationed nearby during World War II, before the property was subdivided. We are thus faced with two categories of fill: (1) the lower level placed there when Hein owned both parcels; and (2)

the upper level placed there after the property had been subdivided.

If we were to permit Hein, with impunity, to "take or damage" the lower level of fill on Bay's land, we would be permitting a landowner to place an improvement upon the land and thereafter remove it after having conveyed it to another. Such a result would not only be unconscionable, but would also run contrary to the law of lateral support to land. Even in those jurisdictions which hold that the duty of lateral support is a duty only to support the *soil* in its natural state (and hence no liability for consequential damages to a building placed thereon), the courts have not hesitated to modify the general rule. When an owner erects a building and subsequently conveys that portion of the land on which the building is situate, retaining the remainder for himself, support for the building is charged upon so much of the surrounding land as is necessary for that purpose. *Durante v. Alba*, 266 Pa. 444, 109 A. 796, 9 A.L.R. 485 (1920). *See also* 5 R. Powell, *The Law of Real Property* § 700 (P. J. Rohan ed. 1971). The reason for this extension of the general common-law duty of support is that at the time the building is constructed it derives ample support from the rest of the builder's *own* land. The owner who constructed the building (placed the improvement) did not increase his neighbor's duty of lateral support. He merely charged a portion of his own land with an increased duty. When the owner subsequently divides his land and conveys the dominant estate, the benefit of the increased lateral support must run with the land conveyed.

Thus, by analogy, Hein was under no duty to provide lateral support to that portion of the fill which we have described as the upper level, but he was under a duty to laterally support the lower level of the fill—that which was placed there during the time when he owned both parcels. It follows that the critical factual finding, which must be made by the trial court, is whether or not Hein's excavation invaded the lower level of fill. Hein may, without having "taken or damaged" his neighbor's land in the con-

stitutional sense, excavate the upper level of fill on his own land—thus, of physical necessity, invading a portion of Bay's upper level of fill. He may not, however, excavate the lower level of fill on his own land at or near the boundary line to such an extent that the lower level of fill lying on Bay's property is "taken or damaged."

In an action against one's neighbor for taking or damaging property, the plaintiff has the burden of establishing that a taking or damaging—in the constitutional sense—has taken place. *McCoy v. Emrich,* 72 Wn.2d 850, 435 P.2d 550 (1967). Accordingly, if the record is such that the trial court cannot resolve the critical fact issue, then Bay has failed to sustain his burden of proof. Resolution of that issue must remain in the competent hands of the learned trial judge who, incidentally, viewed the premises during trial.

■ Bay contends, finally, sufficient time has elapsed since the fill was deposited, that the duty of lateral support runs to all of the fill as well as to the natural soil. Such a contention is in reality a contention that the duty of lateral support has somehow been enlarged through prescription.

In support of this contention, Bay directs our attention to some apparent precedent in another jurisdiction. *Bradley v. Valicenti,* 185 Pa. Super. 403, 138 A.2d 238 (1958). It is doubtful whether or not *Bradley* supports Bay's contention, even in Pennsylvania. *Albert v. Wright,* 410 Pa. 383, 189 A.2d 753 (1963). American courts have generally refused to recognize prescription as a method for changing the content of the duty of lateral support. For a discussion of this concept *see* 5 R. Powell, *The Law of Real Property* § 700, at 294 (P. J. Rohan ed. 1971). We see no reason to enlarge upon the duty of lateral support, except as otherwise noted herein.

This appeal is remanded to the trial court with instruction to make such necessary finding of a material fact as

the record will permit consistent with the provisions of this opinion.

PEARSON, C.J., and ARMSTRONG, J., concur.