[No. 21123-4-I. Division One. May 8, 1989.]

HARRY KLEBS, ET AL, *Appellants,* v. BYUNG SIK YIM, ET AL, *Respondents.*

*Joel E. Bradshaw* and *Newman, Bradshaw & Richards,* for appellants.

*Donald McLeod,* for respondents.

SWANSON, J.—The plaintiffs, Harry Klebs and Lillian E. Hutter, appeal the trial court's order dismissing their complaint and awarding attorney fees to the defendant, Byung Sik Yim. We affirm.

Klebs and Hutter have not challenged or assigned error to any of the trial court's findings of fact. Unchallenged findings of fact become verities on appeal and are treated as the facts of the case. *Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 123, 615 P.2d 1279 (1980). Accordingly, the trial court's findings of fact, as set forth below, will be treated as the facts of this case.

FINDINGS OF FACT

1. Plaintiffs own the property located at 9251 Tenth Avenue, S.W., Seattle, Washington, which abuts on its rear westerly line with the rear easterly line of the lot owned by defendants Yim at 9250 Eleventh Avenue, S.W. and at the abutting property line, plaintiffs' lot is approximately five feet higher than defendants' property.

2. In approximately 1965, defendant's predecessor in interest installed a railroad–tie retaining wall two to three feet in height.

3. In 1967, plaintiffs' predecessor in interest, Mr. James McCarthy, built a swimming pool on the western portion of his lot and in the process deposited a substantial amount of fill material between the western edge of

the pool and the western lot line. He also poured a concrete apron (deck) around the pool. The apron on the west end of the pool sloped towards the western lot line.

4. At some time within two years after the completion of the swimming pool on plaintiffs' lot, the railroad–tie retaining wall was replaced by a concrete bulkhead approximately five feet high along the common boundary of plaintiffs' and defendants' lots from the northerly lines to the southerly lines. As built, the concrete bulkhead was entirely on defendants' property. The concrete bulkhead was not built by defendants. If there were any flaws in the wall or if the wall were negligently built, they could not be discovered by inspecting the wall.

5. During a period of heavy rains in January of 1986, the retaining wall collapsed without warning due to hydrostatic pressure behind it. The wall did not contain drain holes or rebar tying the wall to the footings. The collapse of the wall caused some material damage to plaintiffs' property.

6. Plaintiffs presented no evidence to show that the change in runoff resulting from the concrete deck sloping toward the wall did not cause the wall to collapse.

7. Defendants made an offer of settlement more than ten (10) days before trial which was not accepted by plaintiffs.

8. Defendants' attorneys expended 61.4 hours of time on this case and $4000.00 is a reasonable amount to be allowed as attorneys fees, considering the amount involved, the time spent by Counsel, the nature of the issues litigated and the change of Counsel by defendants."

9. Both parties agreed and stipulated in open court that the case would be tried by a Judge Pro Tem.

10. Plaintiffs filed a Lis Pendens against defendants' property, giving notice of the claims herein.

11. Plaintiffs made an offer of settlement prior to arbitration and were awarded attorney's fees thereunder at arbitration.

The case was originally decided in arbitration pursuant to the mandatory arbitration rules and resulted in an arbitration award in favor of Klebs and Hutter. The Yims subsequently filed a timely request for trial de novo. The trial court ruled in favor of the Yims, dismissing Klebs' and

Hutter's complaint and awarding attorney fees and costs to the Yims.

## LATERAL SUPPORT

Klebs and Hutter contend that Yim, as the subsequent owner of the adjoining real property, has a duty to maintain the existing retaining wall on the property even though the wall was built by a predecessor in interest, and therefore, is to bear the cost of reconstruction.

In Washington, the well established right to lateral support of real property is founded not only upon the common law right, but also upon the constitutional right[1] that prohibits the taking or damaging of real property for public or private use without just compensation. *Bay v. Hein,* 9 Wn. App. 774, 776, 515 P.2d 536 (1973). Under the constitution, every landowner in Washington has a natural right to lateral support. *Bay,* 9 Wn. App. at 776–77.

> An adjoining [land] owner who causes his neighbor's property to slide and slip because of loss of lateral support is liable in damages resulting therefrom under the constitution and law of the state regardless of negligence. However, the sliding and slipping of the soil must occur because of its own weight and not because of the superimposed weight of the buildings or improvements placed thereon.

(Footnote and citations omitted.) *Simons v. Tri–State Constr. Co.,* 33 Wn. App. 315, 319, 655 P.2d 703 (1982).

However, Washington courts have not yet addressed the issue of whether the duty of lateral support is a continuing obligation that runs with the land such that a subsequent owner of adjoining real property has a duty to maintain an existing retaining wall on the property. In support of their argument that such a duty exists, Klebs and Hutter rely on *Salmon v. Peterson,* 311 N.W.2d 205 (S.D. 1981). In *Salmon,* a retaining wall separating two adjoining lots bulged and pushed out following a heavy rain, causing

---

[1]Const. art. 1, § 16 (amend. 9) provides in part: "No private property shall be taken or damaged for public or private use without just compensation having been first made, . . ."

damage to the neighboring lot it was supporting. The failure of the wall was found to have been caused by a buildup of hydrostatic pressure behind it. The wall was constructed on Peterson's property prior to her ownership and it supported Salmon's property. The Supreme Court of South Dakota affirmed the lower court's decision requiring Peterson to rebuild the wall. In reaching this conclusion, the South Dakota court concurred in the reasoning of *Gorton v. Schofield*, 311 Mass. 352, 41 N.E.2d 12 (1942) and *Foster v. Brown*, 48 Ont. L.R. 1 (1920), and held that "the present owner of the land and the retaining wall had the continuing duty to maintain the wall so that it would provide continuing lateral support". *Salmon*, at 207. Quoting from *Gorton*, the South Dakota court said:

> "[We] are of opinion [sic] that the burden of providing lateral support to the plaintiff's land in its natural condition is one of continued support running against the servient land."

*Salmon*, 311 N.W.2d at 206 (quoting *Gorton*, 41 N.E.2d at 15). This statement was supported by the reasoning in *Foster*:

> [T]he consequences of 'holding otherwise would be that where a land–owner had made an excavation in his land, and thereby removed the lateral support to which his neighbor is entitled, but had built a solid retaining wall to prevent subsidence, which, during his ownership, prevented it, and had then sold his land to another and that other to others, and, owing to a subsequent owner—it might well be fifty years after—permitting the retaining wall to decay and no longer to answer the purpose for which it was constructed, with the result that his neighbor's land has subsided, he would be liable to answer in damages for the injury, and the man whose failure to keep up the retaining wall was the effective cause of the injury would go scot free, and that too where the subsidence would not have occurred if the retaining wall had been kept in repair.'

*Salmon*, 311 N.W.2d at 206–07 (quoting *Gorton*, 41 N.E.2d at 15 (quoting *Foster*, 48 Ont. L. Rep. at 5–6)).

Agreeing with *Salmon, Gorton,* and *Foster,* the Supreme Court of Appeals of West Virginia stated:

> [W]hen an actor who removes natural lateral support substitutes artificial support to replace it, such as a retaining wall, the wall then becomes an incident to and a burden on the land upon which it is constructed, and subsequent owners and possessors have an obligation to maintain it.

*Noone v. Price,* 298 S.E.2d 218, 222 (W. Va. 1982). *See also* 1 Am. Jur. 2d *Adjoining Landowners* § 47 (1962).

This being the state of the law in other jurisdictions that have addressed the issue, we adopt the rule and reasoning of the above cited cases as the natural extension of the well established right of lateral support in Washington.

■ Next, we must determine whether the plaintiff has proven to the trial court that the failure of the wall was the result of improper construction of the wall rather than the result of buildings or improvements placed on the lot being supported. *See Salmon,* 311 N.W.2d at 207. Although adjacent landowners each have an absolute property right to have their land laterally supported by the soil of their neighbor, this right does not include the right to have the weight of buildings or improvements placed on the land also supported. 2 G. Thompson, *Real Property* § 415, at 609 (1980); *Simons,* 33 Wn. App. at 319. The landowner cannot, by placing an improvement upon his land, *increase* his neighbor's duty to support the land laterally. *Bay,* 9 Wn. App. at 777. Accordingly, the owner of the lot with the duty to maintain the wall should only be required to reconstruct the wall under the right of lateral support if the failure of the wall was due to its inability to support the natural, unimproved land, rather than improvements on the supported lot. Otherwise the party with the duty to maintain the wall would be responsible for *improving* the wall to hold *more* than the natural land would have held.

In *Salmon,* the trial court found that the failure of the retaining wall was due to hydrostatic pressure behind the wall caused by inadequate drainage devices, footings and

reinforcements in the wall rather than improvements to the supported property. On review, the Supreme Court of South Dakota held that these findings were supported by the record. *See Salmon,* 311 N.W.2d at 207.

Here, the trial court, as in *Salmon,* found that the retaining wall collapsed due to hydrostatic pressure behind the wall that was caused by inadequate drainage, footings, and rebar. However, the trial court here made an additional finding that Klebs and Hutter "presented no evidence to show that the change in runoff resulting from the concrete deck sloping toward the wall did not cause the wall to collapse." As previously stated, these findings are not challenged and, therefore, are treated as verities on appeal. *See Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 123, 615 P.2d 1279 (1980).

The concrete deck sloping toward the wall was placed upon Klebs' and Hutter's property by their predecessor in interest when he built a swimming pool on the property. To hold Yim responsible for reconstructing the wall under the right of lateral support, Klebs and Hutter must show that these improvements would have been supported by the natural land which the retaining wall replaced.[2] Klebs and Hutter have failed to support this burden. Therefore, it was not error to refuse to hold Yim responsible for reconstructing the retaining wall.

## ATTORNEY FEES

Klebs and Hutter also challenge the trial court's award of attorney fees to Yim, contending that it will "nullify and render meaningless" the language of MAR 7.3.

In awarding attorney fees to Yim, the trial court reached the following conclusions:

---

[2]This is consistent with the rule placing the burden on the owner of the supported property to show damage. *See Bay v. Hein,* 9 Wn. App. 774, 779, 515 P.2d 536 (1973): "In an action against one's neighbor for taking or damaging property [under right of lateral support], the plaintiff has the burden of establishing that a taking or damaging—in the constitutional sense—has taken place."

6. Defendants are entitled to reasonable attorneys fees under RCW 4.84.250 for defending this action. Defendants had no duty to plead RCW 4.84.250 under the circumstances of this case. MAR 7.3 does not preempt the application of RCW 4.84.250.

7. Defendants are entitled to an award of reasonable attorneys fees in the amount of $4,000.00, plus statutory costs.

RCW 4.84.250 provides:

Attorneys' Fees as costs in damage actions of ten thousand dollars or less—Allowed to prevailing party. Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20.060, in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is seven thousand five hundred dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees. After July 1, 1985, the maximum amount of the pleading under this section shall be ten thousand dollars.

A defendant is a prevailing party for purposes of RCW 4.84.250 "if the plaintiff, or party seeking relief in an action for damages . . . recovers nothing . . ." RCW 4.84.270.

Here, the plaintiffs (Klebs and Hutter) recovered nothing. Their action was dismissed with prejudice. Therefore the defendant (Yim) is a prevailing party for purposes of RCW 4.84.250 and "shall be . . . allowed . . . a reasonable amount to be fixed by the court as attorneys' fees." RCW 4.84.250.

The language of MAR 7.3 does not prohibit the trial court from making an award of attorney fees under RCW 4.84.250. MAR 7.3 provides:

### COSTS AND ATTORNEY FEES

The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo.

The purpose of this provision is to deter meritless appeal. *Christie–Lambert Van & Storage Co. v. McLeod,* 39 Wn. App. 298, 303, 693 P.2d 161 (1984). This is done by assessing costs and attorney fees *against an appellant* from a mandatory arbitration award who does *not* improve his position in the trial de novo. *Christie–Lambert,* 39 Wn. App. at 303.

Yim, as the appellant, did improve his position in the trial de novo. To deny him an award of attorney fees would not only controvert the mandatory language of RCW 4.84-.250 ("shall"), but also would not serve MAR 7.3's purpose of deterring meritless appeals. Therefore, the trial court's award of attorney fees will be upheld.

Yim has also requested an award of reasonable attorney fees for this appeal.

RCW 4.84.290 provides:

> Attorneys' fees as costs in damage actions of ten thousand dollars or less—Prevailing party on appeal. If the case is appealed, the prevailing party on appeal shall be considered the prevailing party for the purpose of applying the provisions of RCW 4.84.250: *Provided,* That if, on appeal, a retrial is ordered, the court ordering the retrial shall designate the prevailing party, if any, for the purpose of applying the provisions of RCW 4.84.250.
>
> In addition, if the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees for the appeal.

Yim is the prevailing party on appeal and, as previously discussed, is entitled to attorney fees under RCW 4.84.250. As such, the appeals court "shall" allow to Yim an amount that it determines to be reasonable.[3] Yim has complied with the requirements of RAP 18.1 and, accordingly, will be awarded attorney fees for this appeal in the sum of $2,500.

---

[3] "Shall" has a mandatory meaning when used in a statutory provision providing for attorney fees. *See Singleton v. Frost,* 108 Wn.2d 723, 742 P.2d 1224 (1987).

50

We affirm the trial court.

WINSOR, J., and SCHUMACHER, J. Pro Tem., concur.

Reconsideration denied August 14, 1989.