[No. 5254–7–II.   Division Two.   December 7, 1982.]

JOHN W. SIMONS, *Respondent,* v. TRI–STATE
CONSTRUCTION COMPANY, *Appellant.*

*Richard L. Martens* and *Waitt, Johnson & Martens,* for appellant.

*Jon C. Parker,* for respondent.

PETRICH, A.C.J.—Tri–State Construction Co. (Tri–State), which had installed certain sewer pipes for the City of Hoquiam pursuant to a contract with the City, appeals from a partial summary judgment adjudging it liable for damage to Simons' house and property based on the removal of lateral support and from a denial of its motion for summary judgment of dismissal. For the purposes of the summary judgment motion Simons' claim was predicated upon article 1, section 16 of the state constitution.[1]

In addition to the question of whether there is a genuine dispute of a material fact as to the loss of lateral support and its cause, this appeal presents the following issue: Is a contractor, doing work for a city under a contract the city is authorized to make, and who is otherwise not liable for damages to a third person because the work is done without negligence and in compliance with the city's plans and

---

[1]Article 1, section 16 of the Washington State Constitution reads in part: "No private property shall be taken or damaged for public or private use without just compensation having been first made . . ."

specifications, made liable to such third person because of the contractor's obligation to indemnify and hold harmless the city from claims, losses and damages arising from the work?

We conclude that the affidavits and interrogatories considered by the trial court raise a dispute as to a material fact concerning the loss of lateral support and its causes. We also conclude that the indemnity agreement does not impose liability on the contractor. We therefore hold that the trial court erred in granting Simons' summary judgment as to liability and denying Tri–State's motion for summary judgment of dismissal.

Tri–State was the general contractor of a sewer relocation project for the City of Hoquiam, Washington. A portion of the project called for excavation and backfill of trenches located in the street, 20 to 25 feet in front of Simons' house. The construction agreement between the City and Tri–State included plans and specifications and a provision whereby Tri–State agreed to hold harmless, indemnify and defend the City from all liability claims, losses, or damage arising from the performance of the work. The indemnity clause is as follows:

> Indemnity. The Contractor shall hold harmless, indemnify and defend the Owner, the Engineer and his consultants, and each of their officers and employees and agents, from any and all liability claims, losses or damage arising or alleged to arise from the performance of the work described herein, but not including the sole negligence of the Owner or the Engineer, employees and consultants.

Work began in front of Simons' house in November 1977. In January 1978, Simons noticed structural problems with his house: doors on the main floor would not shut; the cement walls and floor in the basement cracked and flooding occurred; the house developed a tilt; and potholes developed in the front yard. Simons admits there was minor cracking in the basement before the sewer project, but contends the project caused substantial settling, crack-

ing of the basement, and distortion of the house.

Simons brought suit against Tri–State alleging the removal of lateral support damaged the property and that Tri–State negligently performed the work. The City was later joined as a defendant. Simons moved for summary judgment against Tri–State on the theory of loss of lateral support; negligence was not an issue. Tri–State moved for summary judgment of dismissal on the theory that a contractor performing work for a city in accordance with the terms and specifications of the contract is free from any liability for damages resulting from such work absent negligence on his part.[2] The trial court denied Tri–State's motion and granted Simons' motion apparently on the theory that under the indemnity agreement, Simons had a direct cause of action against Tri–State regardless of whether Tri–State was an agent of the City and not negligent or otherwise liable for loss of lateral support.

Pursuant to CR 56(c), a summary judgment is available only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974), outlined the criteria in granting or denying summary judgment. The salient portions are paraphrased as follows:

(a) A "material fact" is one which controls the outcome of litigation.

(b) The moving party bears the burden of demonstrating there is no dispute as to a "material fact," and all reasonable inferences must be resolved against him. As a corollary to this proposition, the trial court must consider all evidence and reasonable inferences in a light most favorable to the nonmoving party.

(c) Summary judgment should be denied unless there is

---

[2]Tri–State also contended that the beneficial acceptance of the project by the owner insulates it from any claims by the plaintiff, citing *Donaldson v. Jones*, 188 Wash. 46, 61 P.2d 1007 (1936) and *Thornton v. Dow*, 60 Wash. 622, 111 P. 899 (1910). In view of our disposition of the case, we deem it unnecessary to address this contention.

but one conclusion that reasonable minds could reach from the evidence.

Additional criteria pertinent to this appeal are found in *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 588 P.2d 1346 (1979), which holds that an affidavit containing expert opinion on an ultimate issue of fact is sufficient to create a genuine issue of material fact which precludes summary judgment; and failure to move to strike an affidavit or portion thereof for noncompliance with CR 56(e) waives any deficiency that might otherwise exist.

■ We turn first to the grant of partial summary judgment in favor of Simons. An adjoining owner[3] who causes his neighbor's property to slide and slip because of loss of lateral support is liable in damages resulting therefrom under the constitution and law of the state regardless of negligence. However, the sliding and slipping of the soil must occur because of its own weight and not because of the superimposed weight of the buildings or improvements placed thereon. *Kelley v. Falangus,* 63 Wn.2d 581, 388 P.2d 223 (1964); *Muskatell v. Seattle,* 10 Wn.2d 221, 116 P.2d 363 (1941); *Farnandis v. Great N. Ry.,* 41 Wash. 486, 84 P. 18 (1906). At common law, the right of the owner to damages for loss of lateral support in the absence of negligence extended only to the land in its natural state. However, under the constitution, the owner is entitled to damages not only to the land in its natural state but also to the buildings and improvements on the property once it is demonstrated that additional lateral thrust from the weight

---

[3]Simons, while claiming in his brief that strict liability for lateral support extends to Tri–State even though not the owner of adjoining land, does not cite any authority for this proposition. Rather, he contends that Tri–State's indemnity agreement with the City entitles him to direct relief. Tri–State, on the other hand, while pointing out it is not the adjoining landowner who bears the burden of strict liability for lateral support, relies primarily on its defenses in support of its motion for summary judgment of dismissal. This opinion does not address or attempt to resolve whether or not a nonowner of adjoining property who is free of negligence may be held strictly liable for loss of lateral support under the constitution. Resolution of that issue must await some future litigation based on facts as yet unforeseen.

of the improvements has not precipitated or caused the damages. *Kelley v. Falangus, supra.*

Simons' evidence, as set forth in various affidavits and interrogatories in support of his motion for summary judgment, tends to establish that before November of 1977, when the sewer project was commenced along the street fronting his home, Simons' home was sound with only minor cracks in parts of the concrete and masonry work; that the following January, after completion of the sewer project, there was a noticeable settling of the home resulting in substantial cracks in the concrete basement floor and masonry walls, and a definite tilt to the floors and walls causing doors to misalign and requiring substantial shimming and jacking of the foundation to help alleviate the problem; that a pothole developed in the yard; and that the settling and damage to the home was the direct result of the sewer project.

Tri–State's evidence in opposition to Simons and in support of its own motion for summary judgment of dismissal consisted of the affidavit of James Hargett, a civil engineer of the firm engaged by the City who acted as resident engineer of the project, and that of William O'Brien, project manager of the sewer project for Tri–State. This evidence supports the proposition that Tri–State's work on the project was done in strict compliance with the plans and specifications of the City of Hoquiam; that some time after the completion of the project the Simons house was personally examined by them and that the "footings, concrete block wall, basement floor, driveway, walls and partitions alleged to have been damaged . . ." were inspected; and that numerous cracks with old paint and mortar were observed. The professional opinion of Jim Hargett based on his experience, inspection, and observation, was that the settlement and cracking conditions then present existed before the start of the sewer project.

Mr. O'Brien made his own observations, considered the statement of Simons that the portions observed were last painted prior to the sewer project, and stated, "it is clear

that the evidence of settlement and cracking existed prior to the sewer relocation project."

Simons contends that Hargett's opinion should be disregarded because it lacks a factual basis and there is no showing of his expertise. He further contends that O'Brien's affidavit does not warrant consideration since it is not based on personal knowledge nor does it otherwise comply with CR 56(e). He further contends that neither affidavit responds to the plaintiff's contentions of obvious tilt, shimming, and jacking, indicating substantial damages far in excess of previous minor cracks which existed prior to the sewer project. Our review of the record discloses that Simons never moved to strike Tri–State's evidence for the reasons now urged. Simons waived his right to challenge these deficiencies. *Lamon v. McDonnell Douglas Corp.*, *supra.*

Viewing the inferences created by the affidavit of Mr. Hargett in a light most favorable to Tri–State as the non-moving party, we are satisfied that the opinion expressed therein created an issue of material fact as to whether the claimed damages resulted from Tri–State's sewer project. This necessitates reversal of the partial summary judgment.

We believe there is an additional reason why summary judgment on liability should have been denied. We do not believe that Simons has established that his soil settled by its own weight as a result of loss of lateral support and not because of the superimposed weight of the buildings. There is only an inference that this may have occurred because of the pothole in the yard, and this inference is to be resolved against him and in favor of Tri–State. On the basis of this single pothole, whose dimensions and location in reference to the lot and sewer line are unknown, we can hardly hold that the only reasonable conclusion is that the soil settled by its own weight unaffected by the superimposed weight of the building.

We now turn to Tri–State's motion for summary judgment of dismissal. Tri–State has established that its work on the sewer project was performed pursuant to a contract

with the City. Tri–State contends that it strictly complied with the terms and specifications of the contract. Simons does not in his brief challenge this contention nor does Simons contend that Tri–State was in anywise negligent in performance of its work.

The rule in Washington is that where a city contracts for improvement upon a street, and the contractor performs in accordance with the plans and specifications furnished by the city and under the city's supervision, the contractor is the agent of the city and is not liable for damages where he is not otherwise negligent. *See Muskatell v. Queen City Constr. Co.*, 3 Wn.2d 200, 100 P.2d 380 (1940). Simons does not challenge this rule. His theory is that the agreement between Tri–State and the City creates a cause of action directly against Tri–State, the indemnitor. We do not agree.

█ Indemnity clauses are subject to fundamental rules of contractual construction: the intent of the parties, which is controlling, must be gathered from the contract as a whole; construction of the agreement must be reasonable so as to carry out the purpose of the agreement; an ambiguity will not be read into a contract where there is none; and any ambiguities will be resolved against the drafter. Three additional principles apply to indemnity agreements:

(a) clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; (b) such clauses are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of performance of the contract; and (c) causation of loss is the touchstone of liability under a construction contract indemnity clause, rather than negligence, although negligence may be incidental to the cause.

*Jones v. Strom Constr. Co.*, 84 Wn.2d 518, 520–21, 527 P.2d 1115 (1974).

We have not located any Washington cases clearly

resolving whether an injured third party may directly sue an indemnitor. We find it necessary to look to general authorities.

In general, only an indemnitee or someone in his right is entitled to sue on a contract of indemnity. Thus, a third party is not entitled to sue on an indemnity contract unless he is able to prove the contract is not "merely for indemnity but also creates a direct obligation in his favor". 42 C.J.S. *Indemnity* § 29 (1944). At 4 A. Corbin, *Contracts* § 805 (1951), the author points out that individual citizens have recovered against a contractor based upon a contract between a municipality and contractor, where the language of the construction contract is broad enough to make the injured property owner a third party beneficiary of the contract, or, stated another way, where the contractor, not otherwise liable to individual citizens, makes himself liable by the terms of the agreement. *See generally* 13 E. McQuillin, *Municipal Corporations* § 37.231, at 490–91 (1971). *See also* Restatement of Contracts § 145 (1932) and Restatement (Second) of Contracts § 313 (1979).

Our courts recognize that one not a party to a contract may sue on an agreement if the parties "intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Burke & Thomas, Inc. v. International Org. of Masters,* 92 Wn.2d 762, 767, 600 P.2d 1282 (1979); *McDonald Constr. Co. v. Murray,* 5 Wn. App. 68, 485 P.2d 626 (1971). The test of intent is "not a desire or purpose to confer a benefit upon the third person, nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him." *American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wn.2d 258, 266, 317 P.2d 521 (1957). Intent is to be gleaned from the contract as a whole, construed in light of the circumstances under which it was made. *American Pipe & Constr. Co. v. Harbor Constr. Co., supra.* Our determination then turns on whether by this agreement the parties intended for Tri–State to assume a direct obligation to someone in Simons' position in addition to the agreement

to indemnify the City. In our view, by the terms of the indemnity agreement, Tri–State agreed to indemnify the City for loss or damage. The agreement does not evidence an intent of the parties to create any further liability for Tri–State such as to pay money or perform other acts for third persons. Cases from other jurisdictions are illustrative of this distinction.

In *Lundt v. Parsons Constr. Co.,* 181 Neb. 609, 611, 150 N.W.2d 108 (1967), involving a contract to construct a sanitary sewer, the contractor agreed to protect the property along the work area against damage and to "repair or repay the injured owners for such damage." The court permitted the property owner to sue the contractor directly. In *Keefer v. Lombardi,* 376 Pa. 367, 368–69, 102 A.2d 695, *cert. denied,* 347 U.S. 1016, 98 L. Ed. 1138, 74 S. Ct. 871 (1954), the court held that a property owner could sue the contractor performing municipal improvement where the contract provided the contractor alone was "*liable and responsible for, and shall pay, any and all loss and damage sustained by any person . . .* [and] *agrees to fully indemnify, protect and save harmless the City . . . from any and all liability and from all suits . . . brought or which may be brought against them . . .*" The court stressed that the contractor expressly assumed liability for losses and damage sustained by any party. In *La Mourea v. Rhude,* 209 Minn. 53, 295 N.W. 304 (1940), involving a sewer construction project, the contractor promised the city it would be "'liable for any damages done to * * * private property' . . ." Recognizing the citizen to be a beneficiary of the contract, the court held that an injured third party could sue the contractor directly regardless of the fact the obligation was also, in effect, one to indemnify the city.

Other cases analyzing a similar or slightly narrower provision have allowed no recovery to the third party as against the contractor. In *Vowell Constr. Co. v. Mountain States Tel. & Tel. Co.,* 335 S.W.2d 804, 806 (Tex. Civ. App.), *rev'd on other grounds,* 161 Tex. 432, 341 S.W.2d 148 (1960), a street improvement agreement provided that

the contractor was to "'be liable for all damages done to . . . structures . . . and shall save and keep the Owner harmless from any liability from injuries, damages or repairs to same.'" The court held that the provision did not clearly indicate an intent to make the contractor an absolute insurer but did appear to be an indemnity contract benefiting the contracting agency. *See also Cothran v. Rock Hill,* 211 S.C. 17, 43 S.E.2d 615 (1947); *United Dispatch, Inc. v. E.J. Albrecht Co.,* 135 W. Va. 34, 62 S.E.2d 289 (1950).

In the instant case Tri–State did not agree to pay to or repair damage suffered by third parties nor did it agree to be liable for the potential damage. Tri–State agreed to indemnify and defend the City for liability claims, losses or damages. There is nothing in the agreement to suggest that anyone other than the City was to benefit from this agreement. We hold then, that Simons has no cause of action against Tri–State based on the indemnity agreement.

Simons contends that *Redford v. Seattle,* 94 Wn.2d 198, 615 P.2d 1285 (1980), stands for the proposition that indemnity agreements are enforceable and create an independent obligation to third persons cognizable at law. Simons misreads *Redford.* In announcing its holding, the court in *Redford,* at page 200 did say "[w]e hold the third party can enforce the indemnity agreement against the contractor." This was perhaps a poor choice of words which is somewhat misleading when taken out of context.

In *Redford,* an employee of a contractor doing work on the owner's premises sued the owner for injuries received claiming negligence on the owner's part. The owner joined the contractor as a *third party* defendant claiming a right of indemnity under a specific release agreement between the owner and the contractor. The status of the parties in the lawsuit was used to characterize the parties vis–a–vis the release agreement. Rather than being a "third party" to the agreement in the sense of being someone other than the bargaining participants of the eventual agreement, the owner, who the court held was entitled to enforce the

agreement, was the specific indemnitee.

There being no issue of material fact on defendant's motion for summary judgment of dismissal and it appearing that there is but one conclusion that reasonable minds could reach from the evidence, Tri–State is entitled to a summary judgment of dismissal of Simons' claim.

We do not address and leave unresolved the City's claim for indemnity against Tri–State, if one is asserted, by means of a cross claim in these proceedings below or in any other appropriate lawsuit.

Summary judgment imposing liability on Tri–State is reversed and the matter is remanded with directions to enter a summary judgment of dismissal of Simons' claim against Tri–State.

PETRIE and WORSWICK, JJ., concur.

Reconsideration denied January 4, 1983.

Review denied by Supreme Court February 18, 1983.