Marilyn A. HAMLIN, individually and as Administratrix of the Estate of Calvin Harold Hamlin, deceased, Appellant (Plaintiff),

v.

TRANSCON LINES; Russel N. Holmes; Raymond E. Befus, in his capacity as Administrator of the Estate of Gerald A. Befus, deceased; and the State of Wyoming, Appellees (Defendants).

Raymond E. BEFUS, in his capacity as Administrator of the Estate of Gerald A. Befus, deceased, Appellant (Defendant),

v.

TRANSCON LINES; Russel N. Holmes; the State of Wyoming, Appellees (Defendants),

v.

Marilyn A. HAMLIN, individually and as Administratrix of the Estate of Calvin Harold Hamlin, deceased, Appellee (Plaintiff).

Nos. 83–221, 83–222.

Supreme Court of Wyoming.

April 1, 1985.

Rehearing Denied June 18, 1985.

Donald J. Sullivan, Cheyenne, for Marilyn A. Hamlin.

Richard Wolf, Cheyenne, for Raymond E. Befus.

Glenn A. Hottenstein of Guy, Williams, White & Argeris, Cheyenne, for Transcon Lines and Russel N. Holmes.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Terry J. Harris, Asst. Atty. Gen., Cheyenne, for the State of Wyo.

Before THOMAS *, C.J., and ROSE, ROONEY **, BROWN and CARDINE, JJ.

ROSE, Justice.

Prior to their accident, Hamlin and Befus were State of Wyoming employees whose sovereign immunity from suit had been removed by § 1–39–105, W.S.1977, 1984 Cum. Supp.,[1] of the Wyoming Governmental Claims Act, §§ 1–39–101 through 1–39–119, W.S.1977, 1984 Cum.Supp., and both of them were covered by, and their heirs are receiving, worker's compensation. By reason of the culpable negligence of Befus, both of these State employees were killed in an automobile mishap while in the scope of their employment.

In the district court, the Hamlin estate[2] sued the State of Wyoming, purporting to be a third-party beneficiary under the con-

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

1. Section 1–39–105, W.S.1977, 1984 Cum.Supp., provides:
   "A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of *any vehicle*, aircraft or watercraft." (Emphasis added.)

2. For convenience, we will often refer to the parties as "Befus" and "Hamlin" even though the real parties in interest are their estates.

tract formulated by § 1–39–104(b)[3] between the Befus estate and the State. By authority of statute[4] and case law,[5] Hamlin's estate also sued the Befus estate for wrongful death, alleging culpable negligence on the part of the Befus estate's decedent. Hamlin was awarded a wrongful-death verdict in the amount of $150,000 against Befus upon which judgment was entered in that amount, while Hamlin's claim for wrongful death against the State was dismissed on motion.

Befus sued the State, alleging that, since the Wyoming Governmental Claims Act removed its sovereign-immunity protection, § 1–39–104(a),[6] by reason of the provisions contained in § 1–39–105, the estate should be indemnified by the State from the ravages of the Hamlin verdict under § 1–39–104(b).

The trial court held that, since both Befus and Hamlin were covered by worker's compensation, neither estate could look to the State—their decedents' employer—for relief because of the exclusive-remedy provisions of the Wyoming Worker's Compensation Act.

We will affirm the trial court's holding that Hamlin has no standing to bring suit against the State of Wyoming for the death of Hamlin, and will hold that Hamlin, as a purported third-party beneficiary may not recover from the State on the statutory agreement contemplated by the Wyoming Governmental Claims Act, but will reverse the trial court's holding that Befus lacks standing to bring suit upon the statutory indemnity agreement on the grounds that the State, being the employer of Befus,

was immune from suit under the worker's compensation law.

*Hamlin's Theory for Relief*

Hamlin, charging vicarious liability, not only seeks recovery against the State for wrongful death in consequence of co-employee Befus' culpable negligence, but also claims to be a beneficiary under the Wyoming Governmental Claims Act, § 1–39–104(b) (see n. 3). In this latter respect, even though Hamlin relies upon the same section of the Act as does Befus—namely, § 1–39–104(b)—Hamlin's theory of recovery from the employer State of Wyoming is necessarily different from that of Befus in that Hamlin—as a judgment creditor of Befus—is admittedly not an employee of the State of Wyoming against whom "liability is alleged" (§ 1–39–104(b) language) in either tort or contract within the contemplation of § 1–39–104(b), as is the case with Befus. Instead, Hamlin claims to be a third-party beneficiary of the statutory indemnity contract (§ 1–39–104(b)) between Befus and the State. The relevant allegations of the Hamlin estate's complaint, in this respect, are these:

"16. There did and does exist a written contractual agreement of indemnification by the STATE OF WYOMING for and to the benefit of GERALD A. BEFUS, deceased, pursuant to the terms of which the STATE OF WYOMING is obligated to indemnify and save harmless the said GERALD A. BEFUS, deceased, against the liability asserted herein, by reason of the commission of tortious conduct in the course and within the scope of his duties

3. Section 1–39–104(b), W.S.1977, 1984 Cum. Supp., provides:
  "(b) When liability is alleged against any public employee, if the governmental entity determines he was acting within the scope of his duty, whether or not alleged to have been committed maliciously or fraudulently, the governmental entity shall provide a defense at its expense. *A governmental entity shall save harmless, and indemnify its public employees against any tort claim or judgment arising out of an act or omission occurring within the scope of their duties.*" (Emphasis added.)

4. Section 27–12–103(a), W.S.1977 (the worker's compensation statute which authorizes third-

party suits), infra n. 7, and § 1–39–105, supra n. 1.

5. *Markle v. Williamson*, Wyo., 518 P.2d 621 (1974).

6. The first sentence of subsection (a) of § 1–39–104 provides:
  "A governmental entity and its public employees while acting within the scope of duties *are granted immunity* from liability for any tort *except* as provided by W.S. 1–39–105 through 1–39–112." (Emphasis added.)

and employment with the STATE OF WYOMING.

"17. The agreement for indemnification of the said GERALD A. BEFUS is and was intended specifically for the benefit of third-party victims of tortious misconduct by employees of the STATE OF WYOMING, including this plaintiff, and plaintiff is entitled to recover judgment against the defendant STATE OF WYOMING on the basis of said express indemnification agreement, set forth at § 1–39–104(b), W.S. (1977, as amended)."

### The State's Response to Hamlin

The State of Wyoming responds to the wrongful-death and third-party-beneficiary theories advanced by Hamlin by urging denial of liability because of the exclusive-remedy provisions of the worker's compensation law.[7]

### Befus' Theory for Relief

The Befus estate says that the indemnity and hold-harmless aspects of § 1–39–104(b) (see n. 3) inure to its benefit for two reasons: first, the plain language of the statute dictates that a State employee in Befus' position will be indemnified and held harmless and, secondly, the Act contemplates that Befus was a member of the class of State employees which the legislature intended would be protected since the Wyoming Governmental Claims Act abrogates Befus' common-law immunity which it first reaffirms in § 1–39–104(a) (see n. 6) and then removes in § 1–39–105 (see n. 1). In short, it is the position of the Befus estate that, absent the Wyoming Governmental Claims Act, Hamlin would not have been possessed of standing to bring a negligence suit because Befus would have been protected by the common-law sovereign-immunity doctrine, but, since the Act has removed this immunity through § 1–39–105, Befus falls within the class of public employee that the legislature *said* and *intended* would be indemnified and held harmless according to the mandate of § 1–39–104(b).

### The State's Response to Befus

The State of Wyoming replies to Befus by asserting that it is an employer with an unqualified and absolute exemption under the worker's compensation law of this state (see n. 7) which, it argues, protects contributing employers—not only from tort claims, but also from employees' actions in contract—and, since Befus was an employee covered by worker's compensation, his employer, the State of Wyoming, has no obligation to indemnify and hold the Befus estate harmless under § 1–39–104(b) (see n. 2).

---

7. Article 10, § 4 of the Wyoming Constitution provides:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications *to each person injured in such employment or to the dependent families of such as die as the result of such injuries,* except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. *The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons BY REASON OF ANY SUCH INJURIES OR DEATH."* (Emphasis and capitalization added.)

Section 27–12–103(a), W.S.1977, provides:

"Exclusive remedy as to employer; nonliability of coemployees; no relief from liability; rights as to delinquent or noncontributing employer.

"(a) *The rights and remedies provided in this act* [§§ 27–12–101 through 27–12–804] *for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are culpably negligent,* but do not supersede any rights and remedies available to an employee and his dependents against any other person." (Emphasis added.)

## The Issue

*Are Hamlin and Befus Entitled To the Benefits and Protections Contemplated By the Wyoming Governmental Claims Act and Particularly § 1–39–104(b), W.S.1977, 1984 Cum. Supp. Or Are They Foreclosed from Recovery by the Exclusive-Remedy Provisions of the Worker's Compensation Laws of This State Or Any Other Provisions of Law?*

### Decision Concerning Hamlin

Hamlin's *Wrongful-Death Claim* Against The State of Wyoming Is Proscribed by the Exclusive-Remedy Provisions of the Worker's Compensation Law

■ Insofar as the estate of Hamlin seeks to hold the State of Wyoming vicariously liable for the wrongful death of the estate's decedent, we agree with the trial court that the estate must fail by reason of the exclusive-remedy provisions of the Wyoming Constitution, Art. 10, § 4, and § 27–12–103(a) (see n. 7).[8] In *Baker v. Wendy's of Montana, Inc.*, Wyo., 687 P.2d 885 (1984) (accord *Parker v. Energy Development Co.*, Wyo., 691 P.2d 981 (1984)), we held that the contributing employer is absolutely immune from all tort claims arising out of any injury which is compensable under the Wyoming worker's compensation law. Hamlin's death resulted from a compensable injury, and therefore his employer, the State of Wyoming, is absolutely immune from Hamlin's wrongful-death action.

However, Hamlin's estate does not confine its claim to a reliance upon a suit against the State for the wrongful death of Hamlin. The Hamlin estate also seeks relief from the State of Wyoming by urging that it is a third-party beneficiary to the statutory agreement contained in § 1–39–104(b) (see n. 3) between Befus and the State of Wyoming.[9]

Hamlin Is Precluded from Asserting A Presumed Third-Party-Beneficiary Agreement—But Not Because of the Worker's Compensation Employer-Immunity Provision

■ The employer—in the employer-employee Wyoming worker's compensation relationship—is possessed of absolute immunity from suit by an employee "by reason of any such injuries or death" (Art. 10, § 4, Wyoming Constitution), or for "injuries incurred in extrahazardous employments" (§ 27–12–103(a)). In other words, the employer immunity granted by Art. 10, § 4 and § 27–12–103(a) is immunity from personal-injury and wrongful-death actions only. This is so because the worker's compensation trade off between employer and employee envisioned a bargain whereby the insured worker and the estate of the deceased worker gave up all rights to common-law tort actions in return for which the employer would contribute to a fund which would compensate the employee or his or her estate for *injury or death* without regard to any except the culpable fault of the employee.[10]

In the case at bar, the Hamlin estate correctly points out that its third-party-beneficiary claim is not founded in tort but is conceived in a statutory indemnity contract between the State and its employee Befus with respect to which Hamlin claims to be a third-party beneficiary. More specifically, it is the Hamlin estate's contention that—since its cause of action is based upon an alleged third-party-beneficiary contract of indemnity—it is not precluded by the immunity provisions of the worker's compensation law from suing the employer State in contract since it does not thereby seek recovery from the employer "by reason of

---

**8.** The worker's compensation employer-immunity provisions are set out in note 7, and our most recent discussion of the employer's absolute immunity is to be found in *Baker v. Wendy's of Montana, Inc.*, Wyo., 687 P.2d 885 (1984) (accord *Parker v. Energy Development Co.*, Wyo., 691 P.2d 981 (1984)).

**9.** See Hamlin's third-party pleading contentions, supra.

**10.** *Parker v. Energy Development Co.*, supra; *Baker v. Wendy's of Montana, Inc.*, supra, and authority cited and referred to in those opinions.

\* \* \* injuries" (Art. 10, § 4) or for "injuries incurred in extrahazardous employments" (§ 27–12–103(a)).

We spoke to the issue having to do with the scope of employer liability exemption in *Pan American Petroleum Corporation v. Maddux Well Service*, Wyo., 586 P.2d 1220 (1978), where it appeared that Maddux was doing a work-over job for Pan American when one of Maddux' employees was burned to death. Maddux had agreed to indemnify and hold harmless Pan American against any liability arising out of the well-service contract. The heirs of the deceased employee of Maddux sued Pan American for wrongful death, and Pan American, in turn, filed a third-party complaint against Maddux. Pan American settled with the estate of the deceased employee and pursued its claim on the indemnity agreement. Maddux argued that it was immune under the worker's compensation employer-immunity provisions. We held that Maddux was liable on the contract—that its only immunity was from employees' tort suits. While that was an action by a litigation who was a third party to the employee-employer relationship and this is an action between the indemnified employee and his indemnitor employer, the same rule applies—that is, any immunity from suit to which an employer is entitled in the worker's compensation context is only such immunity from causes of action in tort as arise out of the injuries or death of the employee. Immunity does not extend, however, to parties to an indemnity contract even where the obligations under the contract of indemnity are triggered by injury or death of an employee in a worker's compensation context. *Pan American Petroleum Corporation v. Maddux Well Service, supra.*

Even though this claim of Hamlin's is in contract—and not in tort—the trial court erroneously disposed of Hamlin estate's contentions as though they were tort claims by holding that this litigant lacks standing to sue the State under the Wyoming Governmental Claims Act, because the employer State of Wyoming is absolutely immune under the exclusive-remedy provisions of the worker's compensation law (see n. 7).

While agreeing that Hamlin lacks standing to invoke the indemnity provisions of the Wyoming Governmental Claims Act, the worker's compensation employer-immunity provisions of the law do not furnish the reason that the Hamlin estate does not possess standing to bring suit against the State of Wyoming under its third-party-beneficiary theory. This is so for the reason that Hamlin's estate is not suing Hamlin's employer in tort for Hamlin's wrongful death, the cause of action forbidden by Art. 10, § 4 of the Wyoming Constitution and § 27–12–103(a) (see n. 7). Therefore, while we will hold that Hamlin does not possess standing to sue the State of Wyoming for reasons which are hereinafter discussed, we cannot agree that employee Hamlin's lack of standing to sue in contract emanates from prohibitions contained in the worker's compensation employer's exclusive-immunity provisions of Art. 10, § 4 of the Wyoming Constitution and § 27–12–103(a).

We do, however, hold that the Hamlin estate is not possessed of standing to sue the State of Wyoming for the reason that Hamlin did not fall within the class of persons that the indemnity provisions of the Wyoming Governmental Claims Act either did or were intended to protect.

### Hamlin's Lack of Standing to Sue Under § 1–39–104(b) of the Wyoming Governmental Claims Act

In 1978, this court abrogated the doctrine of sovereign immunity for all governmental entities except the State of Wyoming itself, under—and according to the terms of—*Oroz v. Board of County Commissioners*, Wyo., 575 P.2d 1155 (1978). Because the legislature felt it unfair that absolute sovereign immunity continue to inure to the benefit of the State and its employees while other governmental entities and their employees were subject to suit, and—because the legislature felt that the citizens of Wyoming would best be served by structuring a method whereby

they could, in specific instances,[11] bring tort and contract actions against the State and its employees—it enacted the Wyoming Governmental Claims Act.[12] As noted, the purpose of the Act is to "balance the respective equities between *persons injured* by governmental actions and the taxpayers" (emphasis added). Thus the legislature's intended purpose is to waive sovereign immunity of the State and its employees *in tort* and contract—in those certain specified instances which are contemplated by the Act and only to the extent contemplated.[13] Therefore, insofar as sovereign immunity is concerned, Hamlin was free to sue Befus for wrongful death since Befus' sovereign-immunity protection was removed by § 1–39–105 of the Wyoming Governmental Claims Act (see n. 1). However, a reading of the Hamlin third-party claim and the Wyoming Governmental Claims Act leads to the conclusion that, even though the sovereign immunity of the State of Wyoming and Befus, its employee, has been waived under § 1–39–105, Hamlin does not possess standing to sue the State as a third-party beneficiary to the Befus-State of Wyoming indemnity agreement because Hamlin does not fall within the class of persons with respect to which the legislature intended that § 1–39–104(b) (see n. 3) would benefit. This is so because *Hamlin is not a person against whom liability is alleged,* § 1–39–104(b), and therefore the State may not be compelled by one in Hamlin's position to respond to its indemnity obligation under the Wyoming Governmental Claims Act.

One who is not a party to a contract may sue on the agreement if the parties

" * * * intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Simons v. Tri-State Construction Co.,* 33 Wash.App. 315, 655 P.2d 703, 708 (1982), citing *Burke & Thomas, Inc. v. International Organization of Masters, Mates & Pilots,* 92 Wash.2d 762, 767, 600 P.2d 1282 (1979); *McDonald Constr. Co. v. Murray,* 5 Wash.App. 68, 485 P.2d 626 (1971).

The Washington court goes on to say:

" * * * The test of intent is 'not a desire or purpose to confer a benefit upon the third person, nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him.' *American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wash.2d 258, 266, 317 P.2d 521 (1957). Intent is to be gleaned from the contract as a whole, construed in light of the circumstances under which it was made. *American Pipe & Constr. Co. v. Harbor Constr. Co.,* supra." 655 P.2d at 708–709.

In *Wyoming Machinery Company v. United States Fidelity and Guaranty Company,* Wyo., 614 P.2d 716, 720 (1980), we said:

" * * * An outsider claiming the right to sue must show that it was intended for his direct benefit."

These rules accurately represent the law on the subject having to do with when

---

**11.** See §§ 1–39–105 through 1–39–112, supra.

**12.** The purpose provision of the Wyoming Governmental Claims Act is to be found in § 1–39–102(a), and provides:

"The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming supreme court decision of *Oroz v. Board of County Commissioners,* 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the

state, state revenues may only be expended upon legislative appropriation. *This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming* whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions." (Emphasis added.)

**13.** See § 1–39–118, where it is provided that the governmental entity's liability is limited to the authority contained in this section.

outsiders may bring suit upon a contract to which they are not a party.

■ Turning to the case at hand, there are no provisions in the Wyoming Governmental Claims Act which would lead to the conclusion that the legislature intended that a new cause of action against the State of Wyoming was to be created in favor of plaintiffs who have obtained verdicts for injury or wrongful death from negligent governmental employees. The Wyoming Governmental Claims Act only requires the governmental entity to save the tortfeasor-employee harmless when he can show that he comes within one of the exceptions to the immunity provisions of the Act *and that he has suffered damage*.[14] The Act does not, however, require that the governmental entity satisfy plaintiffs' verdicts except in those instances where the damage award had actually become a financial obligation of the State employee tortfeasor. In *these* circumstances, where the governmental entity refuses to discharge its indemnity and hold-harmless obligations in behalf of the tortfeasor-employee, it is the tortfeasor who is possessed of a cause of action against the governmental entity under the indemnity and hold-harmless provisions of § 1–39–104(b)—not the purported third-party beneficiary. Therefore, in this case, the State's obligation of indemnity is to one who stands in the shoes of Befus, the negligent State employee-tortfeasor, but the governmental entity owes no duty to plaintiffs such as Hamlin who rely upon the immunity-waiver provisions of the Wyoming Governmental Claims Act as a purported third-party beneficiary. Such a litigant is not possessed of standing to invoke the provisions of § 1–39–104(b).

## Conclusion Concerning Hamlin's Position

It is, therefore, our conclusion that the Hamlin estate must fail in its claim against the State of Wyoming for the wrongful death of its decedent for the reason that the State, as Hamlin's employer, is immune from suit under the exclusive-remedy provisions of the Worker's Compensation Act. The Hamlin estate must also fail as a purported third-party beneficiary under the provisions of § 1–39–104(b) (see n. 3), because, since Hamlin is not a public employee against whom "liability is alleged" (§ 1–39–104(b) language), the Hamlin estate did not belong to the class covered by the indemnity and hold-harmless provisions of the Wyoming Governmental Claims Act.

## Decision Concerning Befus

There are two issues to be considered with respect to the Befus claim for indemnity. The first question asks:

(1) whether, in light of the worker's compensation employer-immunity provisions of the Constitution, Art. 10, § 4, the legislature is authorized to enact a governmental claims act which permits a worker's compensation covered employee to bring suit against his employer in reliance upon a statutory indemnity and hold-harmless agreement; and

(2) if the answer to question (1) is in the affirmative, the second issue asks whether Befus belongs to the class of employee that is covered by the indemnity provision of the Wyoming Governmental Claims Act.

## Issue No. 1
### Does Befus Possess Standing to Sue the State On a Statutory-Indemnity Contract?

■ We hold that the worker's compensation employer-immunity provisions of the Wyoming Constitution (Art. 10, § 4) and § 27–12–103(a) (see n. 7) *do not* proscribe the enactment of a statutory indemnity provision which obligates the State employer to hold harmless a worker's compensation covered employee who has, in a separate third-party suit, been held liable for

---

**14.** Parenthetically, the record in this appeal does not reveal that the Befus estate has suffered damage. There is a verdict and judgment, but no evidence of payment resulting in a financial loss to the Befus estate.

his culpably negligent acts while acting within the scope of his employment.

*Introductory Observations*

As has been previously noted, Befus was a State employee whose estate was sued in a wrongful-death action by Hamlin's estate for culpable neglect in consequence of which a verdict for $150,000 against the Befus estate was returned. The Befus estate seeks indemnity and asks to be held harmless by the State of Wyoming under § 1–39–104(b) (see n. 3). The State contends that Befus' claim against the State must fail since Befus was an employee of the State and covered by worker's compensation at the time of the mishap and, in these circumstances, the employer State of Wyoming is absolutely immune from its employee's suit by reason of the exclusive-remedy provisions of the Wyoming worker's compensation law.[15]

Rationale for Decision on Issue No. 1

We have previously noted briefly in this opinion that the clear language of Art. 10, § 4 and § 27–12–103(a) (see n. 7) leaves no room for any conclusion, with respect to the scope of the worker's compensation employer's immunity provisions, excepting that the protection contemplated by these provisions of our Constitution and statutes protects the contributing employer from personal-injury and/or wrongful-death suits only. *Pan American Petroleum Corporation v. Maddux Well Service,* supra. In support of this conclusion, it is to be observed that the purpose of the amendment to Art. 10, § 4[16] was—in the case of injured or deceased employees—to furnish an exception to the proscriptions of that constitutional provision which held that

"[n]o law shall be enacted limiting the amount of damages to be recovered for causing the *injury or death* of any person." (Emphasis added.)

The effect of the amendment was to enable the passage of legislation which would authorize the establishment of an industrial-accident fund—financed by industry and underwritten by the State[17]—from which the families of deceased employees and employees injured while engaged in extrahazardous employment would be compensated according to amounts previously determined by the legislature. In *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918), we analogized the employer's obligation to contribute to the industrial-accident fund to the corollary duty of an employer to contribute to an industrial-insurance plan in exchange for immunity from tort action and the employee's limited right to claim industrial-injury benefits from the insurer. In Zancanelli, we said—and have reaffirmed ever since—that our worker's compensation law is in the nature of an industrial-insurance act. There can be no doubt but that the worker's compensation law (see n. 7) contemplated that the employer's immunity was a trade off in which the employee agreed, through legislative enactment, to forego the right to bring *personal-injury* and *wrongful-death* actions in return for the contributions by the employers to a fund from which benefits would be paid to injured, and the estates of deceased, employees without reference to any but culpable fault.

We summarized these concepts in *Baker v. Wendy's of Montana, Inc.,* supra, when we said:

"Following the amendment to Art. 10, § 4, the legislature enacted a worker's compensation law which was the legislative embodiment of a compromise between employers and employees who recognized the need for a new system to compensate employees for employment-related injuries without the employee having to rely upon tort concepts. *Meyer v. Kendig,* Wyo., 641 P.2d 1235, 1237

---

**15.** See the applicable constitutional and statutory authority, supra n. 7.

**16.** The amendment to Art. 10, § 4 is all of the language which follows the second sentence of the section (see n. 7).

**17.** *Parker v. Energy Development Co.,* supra; *Baker v. Wendy's of Montana, Inc.,* supra; *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918).

(1982). See also *Barnette v. Doyle,* Wyo., 622 P.2d 1349 (1981); *Stephenson v. Mitchell,* Wyo., 569 P.2d 95 (1977); *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981 (1918). The statutory trade-off for the employers contributing to the fund on behalf of their employees was the provision which gave the employer immunity from 'all other rights and remedies' (§ 27–12–103(a), supra) which the injured employee might theretofore have possessed. *In return, the covered employees and their dependent heirs received the benefit of rapid and certain relief for work-related injuries and death in exchange for forgoing their right to bring common-law actions in tort against their employers who were contributing to their accounts in the worker's compensation fund. Meyer v. Kendig,* supra, 641 P.2d at 1238; *Mauch v. Stanley Structures, Inc.,* Wyo., 641 P.2d 1247, 1249 (1982); *Zancanelli v. Central Coal & Coke Co.,* supra, 173 P. at 988.

"The nature of the law in question is that of an industrial insurance act. This court originally placed this interpretation upon Wyoming's Worker's Compensation Act in *Zancanelli v. Central Coal & Coke Co.,* supra, and we have consistently reiterated this view. *Meyer v. Kendig,* supra; *Bence v. Pacific Power and Light Company,* Wyo., 631 P.2d 13 (1981); *Barnette v. Doyle,* supra; *Markle v. Williamson,* Wyo., 518 P.2d 621 (1974). The industrial-insurance concept evolved from the proposition that industrial accidents are a cost of production and should be borne by the industry. *Zancanelli v. Central Coal & Coke Co.,* supra, 173 P. at 989." (Emphasis added.) 687 P.2d at 887–888.

We went on to say:

"For all the same reasons that an employer may not avoid paying a compensation claim where the worker is injured through his or her own ordinary negligence, *the worker does not have a tort action against the employer when he (or it) is negligent and the worker is covered. This is so because the act cre-*

*ates liability without fault on the part of the contributing employer and likewise provides the employer with absolute immunity from tort actions including the employer's violation of his duty of care whether the negligence is ordinary or culpable. Mauch v. Stanley Structures, Inc.,* supra, 641 P.2d at 1250; *Barnette v. Doyle,* supra, 622 P.2d at 1352. This is to say that immunity is absolute. *Mauch v. Stanley Structures, Inc.,* supra, 641 P.2d at 1252 (Rose, C.J., specially concurring)." (Emphasis added.) 687 P.2d at 888.

From these holdings—long established—it therefore follows that the employer's exclusive immunity from suit of which the worker's compensation law speaks (see n. 7) is immunity from common-law wrongful-death and personal-injury litigation. This means that employees are not precluded from bringing suit against their employers in contract and other forms of action excepting only where any causes of action lodged by an employee against his contributing employer are couched in tort. These holdings also mean that the legislature, by its submission of the restrictive worker's compensation constitutional amendment to the people for their approval, did not intend to foreclose or inhibit its own authority to enact subsequent legislation which would have the effect of managing the rights, remedies and immunities pertaining to governmental entities and their employees. It must therefore be concluded that the people of Wyoming, by authorizing the worker's compensation amendment, did not intend in any way to affect the common-law or statutory rights of employees to bring their various authorized causes of action against their employers except where personal injury or wrongful death is in issue.

It is, therefore, logical to assume that, since the worker's compensation employer immunity only contemplates that the employer will be protected from *tort actions,* a provision of law—such as § 1–39–104(b) (see n. 3)—which directs that the

State employer hold harmless a State-covered employee whose sovereign immunity has been removed by statute and who is not suing the employer in tort but is claiming rights to be protected from negligent-employee verdicts under a statutory-indemnity contract—will not be found to be in conflict with the worker's compensation employer-immunity provisions of the Wyoming Constitution and supporting statutes. This assumption argues for a conclusion in this litigation which says that, since the covered employee's claim is founded in a statutory indemnity contract and is neither directly nor indirectly a claim against the State employer for wrongful-death damages, it must have been the intention of the legislature, when enacting the Wyoming Governmental Claims Act which removes the immunity of State employee Befus, to mean what it said when it made its promise to indemnify and hold harmless.

"[w]hen liability is alleged against *any* public employee * * *." (Emphasis added.)  Section 1–39–104(b).

■ We therefore hold that the worker's compensation exclusive-remedy provisions of the Constitution and statutes do not deny standing to an employee in Befus' position to bring suit against the State of Wyoming in statutory contract for indemnity.

*Issue No. 2*

Did Befus Belong to the Class of Employees Contemplated by the Wyoming Governmental Claims Act?

Having answered the first issue in the affirmative—i.e., that the legislature did have the authority to obligate the State to indemnify Befus—we turn to the second issue which asks whether Befus belonged to the class of employee that is covered by the indemnity provisions of the Wyoming Governmental Claims Act.

This issue calls up the argument which urges that even though employer worker's compensation immunity is restricted to tort actions, and even though the legislature

retained the authority to enact the Wyoming Governmental Claims Act with its indemnity and holdharmless provisions, nevertheless, the Act does not contemplate indemnity for a worker such as Befus who was receiving benefits from the worker's compensation fund.

As a predicate to the question at hand, it is to be remembered that we are not dealing with an injured employee whose estate, having received worker's compensation benefits, is now seeking additional third-party recovery which would, under the appropriate provisions of the worker's compensation law, be required to be utilized to reimburse the fund. Befus only seeks to be indemnified against the payment of a judgment and therefore is not a litigant seeking a double recovery.

We assume that it would, without the risk of extensive discussion, be, conceded that, in the absence of the Wyoming Governmental Claims Act, the estate of Befus would not be liable to the estate of Hamlin, because Befus would have been protected by common-law sovereign immunity. *Oroz v. Board of County Commissioners*, supra. Indeed, even the Wyoming Governmental Claims Act grants Befus sovereign immunity under § 1–39–104(a) (see n. 6). However, the Wyoming Governmental Claims Act goes on to strip the Befus estate of its immunity protection by exempting the State and its employees who are exposed to liability

" * * * while acting within the scope of their duties in the operation of any vehicle * * *."  Section 1–39–105.

■ According to this condition of things, Befus was, then, a State employee who, insofar as the common law and the worker's compensation law are concerned [18] and, for the reason that his sovereign immunity had been removed, § 1–39–105 (see n. 1), was exposed to liability from Hamlin's wrongful-death action. It seems clear to this court that *any* governmental-entity employee whose sovereign immunity the Wyoming Governmental Claims Act undertook to abrogate and against whom liability

**18.** *Markle v. Williamson,* supra n. 5, and § 27– 12–103(a), supra n. 7.

618

had been alleged (§ 1–39–104(b) (see n. 3)) was such an employee as the legislature intended would receive the protection of § 1–39–104(b), which provides that when liability is alleged against *any* public employee acting within the scope of employment, whether or not he was alleged to have been acting maliciously or fraudulently, the governmental entity shall provide a defense to the public employee and save him or her harmless and indemnify the employee against "*any* tort claim or judgment" (emphasis added).

■ Surely the legislature did not intend to withdraw the Befus estate's sovereign immunity under § 1–39–105 in order to leave the Befus heirs exposed to third-party damage suits where, had there been no Wyoming Governmental Claims Act, the Befus estate, under the protection of the doctrine of state sovereign immunity, would have had no such exposure. The proclaimed purpose of the Wyoming Governmental Claims Act was, through its indemnity and hold-harmless provisions (§ 1–39–104(a)), to furnish relief in various restricted situations to those members of the public who are injured or killed by government employees (see § 1–39–102(a), n. 12). It was not, of course, the intention of the legislature to abrogate common-law and statutory immunity, § 1–39–104(a), in order to expose public employees to tort liability in circumstances where there had been no exposure prior to the passage of the Act.

*Conclusion Concerning Befus' Position*

■ We hold that Befus was a member of that class of public employee which the legislature intended would be indemnified and held harmless from wrongful-death damages by the Wyoming Governmental Claims Act. In so holding, we take special note of the fact that, even though Befus was a member of a class that is eligible to claim indemnity protection through the Wyoming Governmental Claims Act, in this case there is absolutely no showing that the Befus estate has suffered any damage whatever by reason of the Hamlin verdict and judgment, and, absent proof of actual

financial loss by the Befus estate, this opinion should not be read to mandate that the State of Wyoming make payment in any amount upon that verdict and judgment.

CONCLUSION

A summary of this court's holding is:

1. Hamlin is authorized to sue Befus as a third party under the worker's compensation law, *and* for the reason that the Wyoming Governmental Claims Act has removed Befus' sovereign immunity.

2. Hamlin's suit against the State for wrongful death must fail because of the employer-immunity provisions of the worker's compensation law.

3. Hamlin's third-party-beneficiary suit against the State under the indemnity provisions of the Wyoming Governmental Claims Act must fail for the reason that Hamlin is not a member of the class the legislature intended to protect—i.e., Hamlin is not a "public employee" against whom "liability is alleged." Section 1–39–104(b) (see n. 3).

4. The Befus estate is eligible to seek the protection of the indemnity provisions of the Wyoming Governmental Claims Act because:

(a) the Befus estate is not precluded from suing its decedent's employer in contract by reason of the employer immunity provisions of the worker's compensation law because that protection only extends to tort claims and Befus' claim in this appeal is in statutory contract for indemnity.

(b) the plain language of the indemnity provisions of the Wyoming Governmental Claims Act purports to protect "*any* public employee" (emphasis added) against whom "liability is alleged"; and

(c) the language of the indemnity provisions of the statute must be given its plain meaning because it is unreasonable to believe that the legislature would have purposely removed Befus' sovereign immunity in order to expose his estate to a wrongful-death suit. It therefore must have been the legislature's intent that *all*

public employees, including Befus, whose sovereign immunity from tort and contract had been abrogated by the Wyoming Governmental Claims Act, would, in turn, be indemnified and held harmless from tort claims or judgment arising out of acts or omissions which occur within the scope of the employee's duties.

Accordingly, we affirm in part and reverse in part, and remand to the trial court for entry of judgment which is not inconsistent with this opinion.

BROWN, Justice, concurring in part and dissenting in part, with whom ROONEY, Justice, joins.

I agree that the Hamlin estate lacks standing to sue the state because of the exclusive remedy provisions of the worker's compensation law. Also, I agree that the Hamlin estate cannot seek relief from the state based on a third-party beneficiary theory between Befus and the state under § 1–39–104(b), W.S.1977, 1984 Cum.Supp., of the Governmental Claims Act.

I disagree with that portion of the majority opinion regarding the state's obligation to indemnify Befus.

Stripped to its essentials, the majority holds in the Befus cross-claim against the state that his claim fails because it did not state a cause of action; and furthermore, that a motion to conform the pleadings to the evidence would not save the case because the evidence was insufficient. If the majority had stopped there I could concur in the result. In an apparent effort to breath vitality into the opinion and extend its normal life span the majority goes on and renders an advisory opinion, in effect writing a set of instructions on how to proceed in similar cases that may arise in the future.[1]

Imaginative people in the future may be able to show payment from a Befus to a Hamlin when in fact no payment was made. Creative courts may simply short-circuit the whole cumbersome process and create a fiction that Befus has suffered damage when he has not. The small problem precluding Hamlin from recovery in this case can easily be solved in the future now that the majority has shown the way.[2]

I find myself in the peculiar situation of dissenting to dicta. I do this because with the passage of time the rule of law in a case and dicta become blurred and eventually indistinguishable. Quote dicta twice and it oft evolves into a rule of law.

The majority opinion addresses the issue of Hamlin being a third-party beneficiary of the statutory agreement between Befus and the state found in § 1–39–104(b), and bases such theory in contract. The opinion concludes that Hamlin cannot assert such claim because she is not within the class of persons intended for protection under the indemnity provisions of the Wyoming Governmental Claims Act. I am not aware of, nor has any authority been cited, which states a third-party has standing as a contractual third-party beneficiary to enforce rights created by the statute in favor of another. One authority states:

"The general rule is that a statutory right of action may be maintained only against persons who are within the contemplation of the statute, and upon whom the duty prescribed by the statute is placed. * * *" 73 Am.Jur.2d Statutes § 434, p. 531 (1974).

The purpose of the Governmental Claims Act is to indemnify "public employees against a tort claim or judgment arising out of an act or omission occurring within the scope of their duties." § 1–39–104(b). But where the judgment arises out of an action by a state employee against another state employee, it seems such indemnification should be barred by the exclusive pro-

---

1. In discussing what I believe to be the ramifications of the advisory portion of the majority opinion I will use the names of Hamlin and Befus to illustrate a future Hamlin-Befus relationship.

2. I think the majority opinion should tell Befus in the beginning that he is not going to win his case. Reading the opinion, Befus will think he is winning until he gets to the bottom line.

visions of the Wyoming worker's compensation law.

" * * * As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries. * * * *The right of each employee to compensation from such fund shall be in lieu of and, shall take the place of any and all rights of action against any employer contributing as required by law to such fund* in favor of any person or persons by reason of any such injuries or death." (Emphasis added.) Article 10, § 4, Wyoming Constitution.

Section 27–12–103(a), W.S.1977 (June 1983 Replacement), also provides:

"The rights and remedies provided in this act [§§ 27–12–101 through 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments *are in lieu of all other rights and remedies against any employer making contributions required by this act* * * *." (Emphasis added.)

In this case, both Hamlin and Befus were employees of the state, and both received compensation under the Wyoming Worker's Compensation Act through their dependent survivors. It seems, therefore, that under both Art. 10, § 4 of the Wyoming Constitution and § 27–12–103(a), the dependents of both Hamlin and Befus have no additional remedies against the state beyond the benefits received under worker's compensation.

I believe that it was the intent of the legislature, in enacting the Governmental Claims Act, to render the State of Wyoming liable for certain torts of its employees in the case of a plaintiff who is not a state employee. I do not believe the legislature intended to create an additional cause of action in behalf of a state employee who is entitled to worker's compensation benefits.

In *Van Houten v. Ralls,* 411 F.2d 940, 943 (9th Cir.1969), the court discussed the relationship between the Federal Employees' Compensation Act (FECA), 5 U.S.C. (Supp. II) §§ 8101, et seq. (1967), and the Federal Drivers' Act, 28 U.S.C. § 2679(b) through (e) (1964). The court said:

" * * * The federal legislative objective in enacting the Federal Drivers Act while leaving the exclusivity provision of the FECA intact was apparently to protect federal drivers from personal liability by rendering the Government liable in tort, in the case of non-federal employee plaintiffs, and by rendering the Government liable only under the FECA in the case of federal employee plaintiffs."

See also *Noga v. United States,* 411 F.2d 943 (9th Cir.1969).

In *Pan American Petroleum Corporation v. Maddux Well Service,* Wyo., 586 P.2d 1220, 1224 (1978), this court said:

" * * * [T]he enactment of the Worker's Compensation statutes resulted in a trade-off of rights and liabilities between the employer and employee. [Citations.] Third parties seeking indemnity, received no benefits and, therefore, should not be held to have impliedly given up any rights. [Citation.]"

While the holding in the Pan American Petroleum case recognizes the right to indemnity in certain circumstances, it does not support either Hamlin's or Befus' theory regarding a right to indemnity. The parties seeking indemnity in the Pan American case and those seeking indemnity here are different. Both Hamlin and Befus were employees of the State of Wyoming, and as a result of their deaths, each of their estates was entitled to and received worker's compensation benefits. In Pan American, the party seeking indemnity was not a party entitled to worker's compensation benefits, and therefore did not impliedly give up any rights to a common-law cause of action.

Appellants argue that the Governmental Claims Act, §§ 1–39–101, et seq., creates a

cause of action against the state in favor of a state employee and his dependents. According to appellants, this claimed cause of action is in addition to the right to receive worker's compensation. The express policy of the Governmental Claims Act does not support appellants' theory. Section 1–39–102(a) states:

"The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming supreme court decision of *Oroz v. Board of County Commissioners*, 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be expended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. * * * "

Before the enactment of the Governmental Claims Act, nonstate employee plaintiffs had no cause of action for injuries caused by the negligence of a state employee or the state of Wyoming, but injured state employees had a right to receive worker's compensation benefits from a fund to which the state contributes as an employer. The Governmental Claims Act was intended to provide the nonstate employee plaintiff with a remedy where none previously existed. The injured state employee is not in the same inequitable position as the injured nonstate employee. The injured state employee is entitled to receive worker's compensation benefits as a result of injuries incurred or death.

I believe that the legislature intended to leave intact the exclusive provisions of the Worker's Compensation Act, § 27–12–103(c), with respect to state employees, and to impose liability on the state for the nonstate employee under the Governmental Claims Act. The last section of the Governmental Claims Act supports this conclusion:

"The provisions of this act shall not affect any provision of law, regulation or agreement governing employer-employee relationships." § 1–39–119, W.S.1977, 1984 Cum.Supp.

The legislature could not, by the Governmental Claims Act, create a right of action against the state in favor of a state employee or his dependents, who are entitled to receive compensation under the Worker's Compensation Act, since Art. 10, § 4 of the Wyoming Constitution prohibits such a cause of action. Any language in the Governmental Claims Act that purports to create a cause of action in favor of a state employee or his dependents in addition to a claim for worker's compensation must fail because of the constitutional bar.

The effect of the dicta in the majority opinion is that the state must pay twice in apparent derogation of the constitutional provision quoted above.[3] Worker's compensation is to be the sole remedy for wrongful death or injury and the only compensation an employer must pay. The majority opinion allows that to be done indirectly which cannot be done directly; i.e., holding the state liable for indemnification as well as worker's compensation. Surely the legislature never intended such a result; it negates the effect and meaning of the exclusiveness of worker's compensation on the part of the employer. *Jackson v. Dravo Corporation*, 603 F.2d 156 (10th Cir.1979).[1]

The majority opinion seems to say that worker's compensation immunity is re-

---

**3.** I am aware, of course, that § 27–12–104(a)(i), W.S.1977 (June 1983 Replacement), provides that if a worker or his estate collect from a third party there is a payback formula to the worker's compensation fund. This payback is only partial, however, and an injured worker can still

get tens of thousands of dollars from the worker's compensation fund even though he has been fully paid by a third party.

**4.** This court is not philosphically consistent in its application of the worker's compensation scheme. An employer contributing to the fund

stricted solely to tort actions. Yet, no conclusive authority is cited for this conclusion. Conversely, Art. 10, § 4, Wyoming Constitution, says " * * * [S]uch fund shall be in lieu of, and shall take the place of *any and all rights of action against any employer * * **." (Emphasis added.)

The majority imposes liability on the state to indemnify Befus by virtue of a "statutory indemnity contract." This concept sounds like a mutation or hybrid. To my knowledge a "statutory indemnity contract" has no legal basis. I do not feel the legislature in this state created such a concept. Even if there was such a concept, I seriously doubt the legislature ever meant it to apply to a situation such as this. Obviously the holding in this case has doubtful ramifications for future application. Furthermore, the "statutory indemnity contract" invented by the majority cannot be compared to an express or implied indemnity contract as discussed in *Pan American Petroleum Corporation v. Maddux Well Service, supra.*

In his dissent in the Pan American case, Justice Raper disagreed with allowing a third-party claim for indemnity from the employer, stating:

"The majority decision has rendered meaningless the concept of workmen's compensation that ' "[i]n adopting the new system both employees and employers gave up something that they each might gain something else, and it was in the nature of a compromise; * * *." ' *Stephenson v. Mitchell, ex rel. Workmen's Compensation Department,* Wyo.1977, 569 P.2d 95, quoting from *Zancanelli v. Central Coal & Coke Company,* 1918, 25 Wyo. 511, 173 P. 981. What they got was: ' * * * The right of each employee to compensation from such fund *shall be in lieu of and shall*

take the place of any and all rights of action* against any employer contributing as required by law to such fund *in favor of any person or persons* by reason of any such injuries or death,' § 4, Art. X, Wyoming Constitution.

"But now, through the employment of an artful manipulation of words, misdirection of legal hypotheses and disregard for the clear language of the constitution, the employer does not have the insurance he has paid for. The employee now may indirectly, through use of a third party go-between, obtain an additional recovery from the employer he could not obtain directly. When that is the case, then as observed by the trial judge, 'it appears the constitutional immunity is nearly at an end.' " *Pan American Petroleum Corporation v. Maddux Well Service,* supra, at 1226–1227.

For the reasons stated, I would affirm the district court's disallowance of Befus' claim for indemnification, as well as the Hamlin claims.

---

could murder his employees and be absolutely immune from civil liability. Conversely, the heirs of a murdered employee could only collect worker's compensation. *Parker v. Energy Development Company,* Wyo., 691 P.2d 981 (1984); and *Baker v. Wendy's of Montana, Inc.,* Wyo., 687 P.2d 885 (1984).

Under the circumstances of this case, however, the majority is not so solicitous of the state of Wyoming as an employer paying into the worker's compensation fund. Under the authority of this case a plaintiff (Hamlin) can do indirectly what he could not do directly. He can use a straw man or conduit (Befus) and collect twice from the state.